GORHAM v. THE KANSAS CITY & SOUTHERN RAILWAY COMPANY, *Appellant.*

Division One, January 23, 1893.

1. **Practice, Appellate:** EXCEPTIONS: REVIEWABLE ERROR. Only such exceptions are available on appeal as have been expressly decided by the trial court.

2. ———: EVIDENCE: HARMLESS ERROR. The court permitted a question to be asked a witness over an exception, but the witness declined to respond to it. *Held* that the ruling was harmless.

3. **Negligence:** RAILROAD: EMPLOYES: PROPER APPLIANCES. It is the duty of a railway employer to use ordinary care to maintain reasonably safe railways and appliances. The evidence reviewed and *held* to support a finding of negligence in omitting such care.

4. ———: PERSONAL INJURIES: MEDICAL SERVICES: DAMAGES: INSTRUC-
TION.   The court authorized a finding of damages for "sums paid out"
by the plaintiff for medical services.   He had paid none but had
become liable to the amount of $50.  *Held,* that the error did not
affect the substantial rights of defendant upon the merits, and
was not a ground for a reversal

5. ———: ———: PROSPECTIVE DAMAGES.   Compensation for prospec-
tive damages on account of the permanency of a personal injury are
recoverable.

6. ———: ———: NON-EXCESSIVE VERDICT.   The amount of the verdict
($3,650) *held* to furnish no cause for reversal.

7. **Practice**: INSTRUCTIONS.   Instructions unsupported by evidence of
the facts for which they call, are erroneous.

8. ———: ———.   It is not error to refuse an instruction of which the
substance is otherwise given.

9. **Negligence**: RAILROAD FREIGHT CONDUCTOR: SPEED OF TRAIN.   A
freight conductor injured by the derailment of a train cannot recover
if the accident was occasioned by the negligent speed of the train
under his direction.

*Appeal from Henry Circuit Court.*—HON. D. A.
DEARMOND, Judge.

AFFIRMED.

THE instructions in the cause in the trial court
were the following:

*Given for plaintiff:*—"1. The court instructs the
jury that it was the duty of the defendant to have kept
its ties, roadbed and track in a reasonably safe condi-
tion for the passage of trains over the same; and to
have furnished for use on said road cars and appliances
which were reasonably safe for use thereon.   And if
you find from the evidence that at the time of the acci-
dent plaintiff was in the employ of the defendant as
conductor of a freight train, and that defendant's road-
bed and track were not in a reasonably safe condition
for passage of trains over the same at the place of the
accident, on account of rotten ties being therein, or

on account of failure to properly ballast said road-
bed, or on account of the inside rail of the curve near
said accident being higher. than the outside rail
thereof, and that defendant knew, or by the exercise of
ordinary care might have known, of the condition of
said ties, roadbed and track before the accident; and
if you further believe from the evidence that at the
time of the accident defendant had provided for use in
said train a caboose with a defective brake and had
placed in said train a car so heavily loaded that it
would not adjust itself to the track in passing over the
same, and that by reason of the rotten condition of said
ties, if they were rotten, or by the reason of defendant's
failure to ballast said road, if it did so fail, or by reason
of the rail on the inside of said curve being higher than
the outside rail thereof, if said inside rail was higher,
or by reason of the overloaded condition of said car,
if it was so overloaded, or by reason of the defective
brake on caboose, if it was so defective, or if by reason
of all said things said train was wrecked, without the
fault of plaintiff and he was thereby injured, you will
find for plaintiff.

"2. If you find for plaintiff, you will, in assessing
his damages, take into consideration his age and con-
dition in life, the injury sustained by him, if any; the
physical pain and mental anguish suffered and endured
by him on account of said injury, if any; his loss of
time, if any; such damages, if any, as you believe from
the evidence he will sustain in the future as the direct
effect of such injury; such sums as he has paid out for
medical attention on account of said injury, if any;
together with all the facts and circumstances in evi-
dence in the cause; and assess the damages at such
sum as from the evidence you may deem proper, not
exceeding $15,000, the amount sued for."

*Given for defendant:*—"2. There is no evidence before the jury that the engineer in charge of the train at the time of the accident was incompetent, and that his incompetency was the proximate cause of the injury complained of by plaintiff, and that issue is withdrawn from your consideration."

"9. The mere fact that there may have. been decayed ties in the roadbed at the point of the accident does not authorize you to find for the plaintiff. You must further believe that the decayed condition of the ties, if they were decayed, was the cause of the wreck, and that defendant knew, or by the exercise of ordinary care, might have known of the decayed condition of the ties, and that the wreck was caused by the fact that the ties were decayed; and, unless you so believe, you will find for the defendant on this issue. You are not authorized to find for the plaintiff from the fact alone that the ties were rotten at the point where the wreck occurred.

"10. Although you may believe from the evidence that the plaintiff was a conductor on the defendant's road, and, while in the employ of the defendant, his train was wrecked and injured thereby, and that the wreck was caused by the roadbed of defendant being in a defective condition, or by reason of the cross-ties thereon being decayed and rotten, or by reason of the brakes being defective, or by reason of one of the cars being overloaded, or by reason of the inside rail being higher than the outside one, all of these facts, if true, do not authorize you to find a verdict for the plaintiff. Before he can recover, you must believe that defendant knew, or by the exercise of ordinary diligence could have known that the track was in a defective condition, or that the cross-ties thereon were rotten, or that the brakes were defective, or that the cars were overloaded,

or that the inside rail was higher than the outside one, and unless you are so satisfied, you will find for defendant.

"11. If the plaintiff knew that the car was overloaded, if such was the fact, or if the same was such that any ordinarily observant person would have known at the time of receiving the same, and the wreck was caused by the overloaded condition of the car, then plaintiff cannot recover.

"12. If the plaintiff knew of the defective condition of the brakes, if they were defective, or could have known if they were of such a character, as an ordinarily observant person would have known, and the condition of the brakes caused the wreck, plaintiff cannot recover.

"13. If the plaintiff knew of the defective condition of the roadbed, if it was defective, or if the defect therein, if there was any, was such as an ordinarily observant person would have known before entering the service of the defendant, then plaintiff cannot recover if such defect was the proximate cause of the injury.

"14. If the plaintiff knew that the cross-ties in defendant's roadbed were rotten, if they were rotten, or if the condition of the ties were such that an ordinarily observant person would have known before the accident, and he continued in the employment of said company after becoming possessed of such knowledge, then he cannot recover if the condition of the ties was the proximate cause of the injury.

"15. If the plaintiff knew that the inside rail of defendant's road was higher than the outside one, if such was the fact, or if the same was of that character that an ordinarily observant person would have known, and he continued in the employment of defendant or entered thereon, with knowledge of the fact, he cannot

recover, if the height of the rail was the proximate cause of the injury.

"16. The law did not require defendant to provide an absolutely safe track and machinery for the use of its employes, and the fact that defendant's may not have been in an absolutely safe condition, does not authorize you to find for plaintiff. All that the law required of defendant was that its track should be in a reasonably safe condition, and if at the time of the wreck you believe that defendant's roadbed, ties and rails were in a reasonably safe condition, you will find for the defendant on the issue of defective tracks and ties.

"19. The court instructs the jury that although you may believe from the testimony that defendant's track was in a defective condition, that there were rotten ties in the same, that the curve in the vicinity of the place of accident had its inside rail higher than the outside one, that there was a car in said train with defective brakes, and also one was overloaded, and that these facts, or any or all of them, caused the accident, yet you cannot find for plaintiff, if you further believe from the evidence that plaintiff knew, or by the exercise of ordinary care could have known of the existence of said facts.

"20. The court instructs the jury, that, if you believe from the testimony that plaintiff was an experienced railroad man, both as engineer and conductor, at the time of the accident, and that he permitted the train under his charge to be run at an unusual and reckless rate of speed, and that said unusual and reckless rate of speed of the train was the proximate cause of the accident, and that, but for said rate of speed the accident would not have happened, notwithstanding defects (if there were any) in the track or cars or manner of loading the cars of the defendant, then the

plaintiff cannot recover and your finding will be for defendant.

"21. The court instructs the jury that the plaintiff, in performance of his duties as conductor of the train of defendant, assumed all the usual and ordinary risks incident to his business, and if injured by any accident arising from these, the defendant is not liable to him therefor; and, if you believe from the testimony that plaintiff created an extraordinary risk for himself by permitting the train to run at an unusually rapid rate of speed, and was injured on that account, your finding will be for defendant."

*Defendant's refused instructions:* "3. There is no evidence before the jury that the cause of the accident was a defective brake on the caboose, and on that issue you will find for defendant.

"4. There is no evidence before the jury that any car in the wrecked train was overloaded, and that the proximate cause of plaintiff's accident was an overloaded car, and on that issue you will find for the defendant.

"5. There is no evidence before the jury that the inside rail, at the point where the cars left the track, was higher than the outside one, and that issue is withdrawn from your consideration.

"7. There is no evidence before the jury that the track of defendant's road at the point where the wreck occurred was defectively constructed or in a defective condition, and that issue is withdrawn from your consideration.

"8. If you believe from the evidence that the three rear cars in the train left the rails on account of the rate of speed at which the train was being run, then such act was the proximate cause of the wreck, and you will find for the defendant."

The other facts appear in the opinion of the court.

*Johnson & Lucas* for appellant.

(1) The court erred in the admission of evidence; no allegation of incompetency was made in the pleadings against the witness Green. (2) The court erred in giving instruction number 1, asked by plaintiff. There was no evidence before the jury that the road was not properly ballasted, or that the ties were defective, or that the alleged defective brakes or overloaded car caused the accident. *Evans v. Transit Co.*, 106 Mo. 601. (3) The court erred in giving instruction number 2, asked by the plaintiff. There was no evidence that the plaintiff had paid out any sums of money for medical attendance, and the instruction is misleading in authorizing the jury to allow "such damages, if any, as you believe from the evidence he will sustain in the future as the direct effect of said injury." *Hawes v. Stock Yards Co.*, 103 Mo. 60; *Duke v. Railroad*, 99 Mo. 351; *Parsons v. Railroad*, 94 Mo. 286. (4) The court erred in its refusal to give instructions numbers 3, 4, 5, 7 and 8, asked by defendant. (5) The damages are excessive and a new trial should be granted for that reason. *Goetz v. Ambs*, 22 Mo. 172; *Benson v. Railroad*, 78 Mo. 504; *Marshall v. Railroad*, 78 Mo. 610. (6) The verdict is manifestly against the law and the evidence and ought to be reversed. Either the accident was caused by the rapid rate of speed at which the train was running, or by the inside rail being higher than the outside. The submission of other questions renders it impossible to determine on what ground the jury found a verdict for the plaintiff. It is more probable from "inspiration" instead of evidence; under these circumstances this court will reverse. *Ackley v. Stacklin*, 56 Mo. 479; *State v. Primm*, 98 Mo. 373; *State v. McNamara*, 100 Mo. 117; *Ellis v. Bray,*

79 Mo. 227; *Hipsley v. Railroad,* 88 Mo. 348; *Spohn v. Railroad,* 87 Mo. 74; *State v. Chouteau Hunt,* 91 Mo. 490.

*Fyke & Hamilton* for respondent.

(1) Appellant's first assignment of error is not well taken.    (2) Instruction number 1, given for plaintiff, was correct.    The evidence fully showed that the road was not properly ballasted, that the ties were decayed, that the brakes were defective and that one of the cars was overloaded.    (3) It was not necessary that the plaintiff should have actually paid out money for medical services in order to entitle him to have the value of such services taken into consideration by the jury in estimating the damages, if he had become liable to pay out money on such account, and the evidence in this case shows clearly that he had become so liable to pay at least $50. *Murray v. Railroad,* 101 Mo. 236. (4) Defendant's instructions, 3, 4, 5, 7 and 8, were properly refused. Each of said instructions single out a particular act of alleged negligence, and withdraws the same from the jury, notwithstanding the fact that there was some evidence to support every alleged act of negligence set forth in the petition. *Barr v. City of Kansas,* 105 Mo. 550, and cases cited.    (5) The damages are not excessive, but in fact are not sufficient to fully compensate plaintiff for the injuries he has sustained.

BARCLAY, J.—Plaintiff recovered a judgment for $3,650 on account of personal injuries sustained in a railway accident on defendant's line near Clinton, Missouri, December 15, 1887.

The petition charged defendant with liability therefor because of negligence in a variety of forms, which will be sufficiently indicated later.

The answer denied the charges, and asserted contributory negligence on plaintiff's part, which he in turn denied by his reply.

The cause was tried in January, 1891, with the result above stated.

In due time defendant filed a motion for new trial, which was denied; and, after the necessary exceptions, it brought the case here by appeal.

Several errors in the proceedings at the trial are assigned. Before taking them up a few words concerning the general features of the litigation will facilitate an understanding of what follows.

Plaintiff was the conductor of a freight train on defendant's railroad, and, at the time of the accident, was riding in a caboose, the last of some eleven cars, composing the train in his charge. One of these cars marked "C., B. & Q." was loaded with ties, and had been taken into the train at Clinton, Missouri. After leaving Clinton, and while passing over a curve in the road, some of the cars ran off the track, and plaintiff was injured in consequence.

The C., B. & Q. car was the third from the end of the train, one car separating it from the caboose. The latter and two other cars were "ditched." The body of the C., B. & Q. car remained on the track, but the track had parted from it and no longer supported it.

Plaintiff claims that the disaster was occasioned by defendant's omission of ordinary care in the respects indicated in the instruction number 1, given at plaintiff's instance, and so the jury found.

The defendant's contention is that plaintiff's injuries are ascribable to his own negligence as conductor in causing the train to be run at a reckless rate of speed, etc.

It will be necessary later on to state some further details of the testimony with reference to special points relied upon for a reversal.

I. Defendant complains of one ruling on the admission of testimony.

It appeared from the evidence of both parties that, at the period of the accident, Mr. Green was the assistant general manager of defendant's railway and in active charge of its operations.    He testified on defendant's behalf.

Afterwards defendant examined Mr. Kane as a witness.    During his cross-examination by plaintiff's counsel the ruling in question occurred.    The following passage from the record shows it fully:

"*Q*. Did Frank M. Green know anything about railroading?    (Objected to by defendant's counsel as incompetent and immaterial, which was overruled by the court, and excepted to by the defendant.)    *A*. I would rather not answer the question as an expert.

"*Q*. I understood you to say that you had been in the railroad business for twenty years?    *A*. Yes, sir. But I don't like to answer the question, not on account of its effects on the case, but because I don't like to say anything that will reflect on Mr. Green."

As the witness himself withheld a direct response to the first question, no prejudice could have resulted to defendant from the court's action, irrespective of the correctness or incorrectness thereof.

To the second question quoted no objection was interposed; nor was any objection or exception taken to the remarks of the witness by way of supposed answer thereto.

Only such exceptions are available on appeal as have been expressly decided by the trial court (Revised Statutes, 1889, sec. 2302).

II. The next point in defendant's brief is that "the court erred in giving instruction number 1 asked by the plaintiff," because "there was no evidence before the jury that the road was not properly ballasted, or that the ties were rotten where the train jumped the track, or that the train left the track at the curve, or that the alleged defective brakes or overloaded car caused the accident."

Of course, instructions should be predicated on the evidence so that if defendant's contention is correct as to the insufficiency of proof in the particulars indicated, the instruction should not have been given. We will hence glance at the testimony in this connection.

George Spangler, as a witness for plaintiff, deposed that he lived near the road; came to the wreck immediately after it occurred, and saw that "the caboose and two or three cars were dumped off the side of the track." "The ties were rotton at the place the cars got off; had been over the track before that; quite a number were rotton; the track was uneven; one side would be low, the other would be high; there would be sags up and down; there was a curve there. * * * The ground was level, but not much dirt between the ties."

E. E. Harris, another of plaintiff's witnesses, testified that he was at the place after the wreck, and "had been over the track that day; it was in bad condition; many of the ties were rotton, and the roadbed was very narrow at that point; the ties would reach over beyond the road bed. This was three or four weeks before the accident. * * * The spikes would not hold, so that the ties would slip in and out from the rails."

William Gilkeson, for plaintiff, testified that he was present at the wreck; that "the outside rail on the

curve was lower than the inside rail, and some ties were rotten."

Isaac Leonard (who was on the wrecked train) testified that he was a blacksmith and general mechanic for defendant; that "the brakes on the caboose were out of order; the connecting rod was too long; it wouldn't draw tight enough to hold the car. Mr. Green was the manager of the road. He knew the condition of the brakes. * * * The Chicago, Burlington & Quincy car was loaded with green oak ties, as full as could be got in; dont know the weight of it; in going around the curve the car would turn on the bolster, and when it got to where the track was straight it could not get back, and consequently it would spread the rails and pull the spikes out and go off. I told Mr. Green the caboose was not fit to go; he said there was no other car."

John Morrow also testified briefly for plaintiff, as follows: "I helped to build the bridges on the road. There was not one sound tie in ten on the road."

On defendant's side, among others, Mr. Green, the assistant general manager, testified to the effect that the track "had been laid down about a year previous to the accident; the ties were not first class, but some were sound when laid down; the rails, first class steel and the spiking well done. The track was not ballasted. The condition of the track between Clinton and Latour was about uniform, requiring new ties; but the road was not in an unsafe condition, and ties, while old, would hold the spikes well to the rail."

All the foregoing testimony came in without objection. To say that it would reasonably justify the inferences of fact called for by plaintiff's first instruction, would be to describe its probative force very mildly.

It was defendant's personal duty as master to use ordinary care to keep and maintain its road way, cars

and machinery in a condition of reasonable safety for use by those required by it to work on or about the same. In our opinion, a description of the accident and of its circumstances emphasizes the statements of the witnesses to the effect that defendant was negligent in the particulars submitted to the jury.

III. Defendant next points out a supposed error in the second of plaintiff's instructions, in that there was no evidence that plaintiff had paid out any sums of money for medical attendance. The criticism is true. There was no proof that he had paid anything for such attention; but there was proof that he had become liable for such payment. There was positive testimony by plaintiff's physician (uncontradicted by defendant) touching the nature and amount of his services to plaintiff, and that their value was "about $50." The instruction would have been more accurate had it called for a recovery of the reasonable value of the necessary medical aid rendered to plaintiff, instead of "such sums as he has paid out for medical attention on account of said injury, if any." But we do not regard such an error as materially prejudicial to the substantial rights of the defendant upon the merits, and hence consider it no ground for a reversal of the judgment, in view of the positive terms of the statutes to that effect. (Revised Statutes, 1889, secs. 2100 and 2303.)

It is also insisted that the second instruction is erroneous in calling for a finding for "such damages, if any, as you may believe from the evidence he will sustain in the future as the direct effect of such injury."

Plaintiff testified that the physician who first attended him after the injury had removed to California. He was not a witness in the cause; but Dr. Menees saw the plaintiff about December 1, 1887, and testified at the trial (more than three years after the

accident) as follows, in regard to his injuries: "He was suffering with a bad ankle and had a cut on his face, and complained of his head bothering him a good deal. I was of the opinion he would never recover entirely from the injury to his ankle. I examined him every few days for a good while, and then about eight months ago, and again since he was here this time; his condition was just the same as it is to-day. The ankle is not fit for ordinary use. My opinion is that the bones were separated in the ankle joint; the outside bone was separated from the bones below. It was loose when we examined it; the ligaments had been injured. It is permanent."

Defendant's medical witness admitted that "an injury to the ankle is more likely to be permanent than at any other point."

This testimony, we think, sufficiently sustains the submission to the jury of the fact of a permanent injury as expressed in the instruction under review. *Rosenkranz v. Railroad*, 108 Mo. (1891), 9.

IV. Here, though slightly out of the order followed in the brief before us, it may be well to dispose of the objection to the amount of the verdict ($3,650).

In addition to the evidence just mentioned showing that plaintiff had been permanently disabled in the use of his ankle, it further appeared from disinterested parties, who were present at the wreck, that plaintiff's head and cheek (near the eye) were cut when he was picked up by the witnesses and put in the wagon that carried him to Clinton. He "seemed to be pretty badly hurt, was bleeding, seemed to be out of his head, didn't seem to know me until we got to town," as witness Spangler said. His left thumb was dislocated. Plaintiff himself testifies that in consequence of the injury he suffered from dizziness whenever he arose suddenly, and that he had a pain in the eye when he

got a cold, neither of which symptoms he had before the accident. He also stated that his capacity to labor had been seriously impaired; that he was "laid up" for three weeks and had been able to work only about one half the time since this mishap.

The trial judge saw the plaintiff and had a far better opportunity to form a reliable judgment of the truth of his representations than we have with only a record before us. He has approved the amount of the verdict, and we do not regard his action in that particular as requiring the interference of this court.

V. Defendant complains of the refusal of certain instructions requested by it. Those given and refused will be set forth in the statement accompanying this opinion. By reference thereto we may be able to shorten our comments on that part of the case.

*First.* The requests for instructions numbered 3, 4, 5 and 7, we think, embody mistaken views of the purport of the evidence as will be seen by a perusal of the second paragraph of this opinion. They are probably subject to other criticisms; but that just stated is sufficient to justify the action of the trial court.

*Second.* The refused instruction numbered 8 is obscured. If by "rate of speed" is meant "an unusually rapid" or "reckless rate of speed," then defendant had the full benefit of that declaration in the instructions given, numbers 20 and 21.

Plaintiff testified that at the time of the catastrophe the train was upon a down grade, running about "eighteen or twenty miles an hour, about as usual." Some of defendant's witnesses placed the speed of the train as high as forty or fifty miles an hour; others of them at twenty-five to thirty miles. If the train ran off the track because the plaintiff, as conductor, suffered it to go at an extraordinary or negligent rate of speed, he would, of course, have no right to

recover; but if he ran the train at the usual rate of speed his conduct would not necessarily be negligent on that account. The cars may have left the track, while being run at a proper rate of speed, in consequence of the defective condition of the roadway, etc. That was the theory of plaintiff, and the finding sustains it. The eighth refused instruction was liable to mislead. In so far as it pointed to a correct rule it was otherwise given by the court as we have shown. We think no error was committed in refusing it.

We have examined each of the points advanced to sustain the appeal, but finding none of them well taken, we affirm the judgment. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.