JEFFERSON F. STOKES, Respondent, v. RAVENSWOOD DISTILLERY COMPANY, Appellant.

St. Louis Court of Appeals, January 7, 1896.

Instructions: NOT WARRANTED BY EVIDENCE. An instruction, which authorizes a finding for the plaintiff on a hypothesis which is not supported by the evidence, is erroneous.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

C. P. & J. D. Johnson and Virgil Rule for appellant.

L. Frank Ottofy for respondent.

BOND, J.—The petition alleges that plaintiff was injured, while working for defendant and under the

orders of its foreman, by the failure of defendant to furnish a sufficient number of men and reasonably safe appliances to enable plaintiff to perform his duties of assisting in the lowering of heavy lumber through a window and down a slide leading to the floor of a basement. The answer was a specific denial, and a plea of contributory negligence. Issue was joined by reply. The cause was submitted to a special jury, who found for plaintiff in the sum of $1,000. Plaintiff appealed.

Plaintiff's evidence tends to prove that he was employed by defendant to do carpenter work under the direction of a foreman (Nelson); that the latter told plaintiff to assist in transferring pieces of heavy lumber, which were lying in the street adjacent to a window, in the basement of a large building owned by defendant; that the method adopted was for plaintiff and a number of other workmen to place the lumber in question in a position to be hoisted to the window, which was about five feet and nine inches above the level of the pavement, whereupon plaintiff and probably others of the men would go into the basement and stand on either side of a slide leading from the window to the floor of the basement, so that, when the pieces of lumber were launched through the window by the men outside, plaintiff and his assistants could seize them after they were shoved beyond the balancing point, and guide them along the slide to the floor of the cellar. The window sill was about eleven feet and nine inches above the cellar floor. The slide was placed at an angle of about forty-five degrees and was braced at the lower end by a short plank abutting against the post standing near the centre of the basement. The method of launching the lumber from the outside was by raising one end to the window and shoving it along until it reached an equilibrium, when a rope was fastened near the other end and held by some of the men, while two

others on the outside mounted on lumber lying against the wall and under the window, and guided the piece of lumber as it was projected through the window, so that it would start straight downward over the slide. At the time of the accident a number of pieces of lumber had been conveyed in this way into the cellar, the average weight of which was from five hundred to eight hundred pounds and the length about sixteen feet. The occasion of the accident was the "lunging" of a piece of lumber after it had been placed partly through the window and rested straight on the upper part of the slide, which motion of the piece of lumber caused plaintiff to jump, whereby he fell upon other pieces of lumber lying in the cellar and sustained the injuries sued for. When plaintiff jumped, it appeared to him that the sliding piece of lumber was careening over in the direction where he stood. This piece of lumber did not escape from control, but was stopped after descending about one third of the length of the slide. With reference to the lowering of lumber of this character witness Dilloway, introduced as an expert by plaintiff, testified as follows:

"*Q.* Supposing the lumber was lowered, as I have stated, on a slide, at an angle of forty-five degrees on the inside, and there are four men holding the rope, can you tell how much a man would be able to hold after this piece of timber had passed the centre of its balance toward the inside? *A.* Where is the line fastened?

"*Q.* To the end of the timber, and there are four men out here holding on to it? *A.* They couldn't control its movement at all for the first few feet.

"*Q.* They could not? *A.* No, sir.

"*Q.* Why? *A.* Because the line of motion of the timber was at right angles to the direction of the rope and you couldn't have the pull on a rope at right angles to the rope."

This witness also stated, in substance, that to retain control of the lumber a "snubbing post" or block and tackle should have been used.

Defendant's witnesses testified, in effect, that the appliances used were the only ones adapted to the condition of the building and the end to be accomplished, and that they were such as were customarily employed.

The first error assigned by defendant is the giving by the court, at the request of plaintiff, of the following instruction:

"The court instructs the jury that it was the duty of the defendant to furnish a sufficient number of men to do the work of lowering the lumber, at the time and in the manner described in the evidence, with reasonable safety to its employees; and if the jury find that defendant failed to do so, and if they find that plaintiff was injured in consequence thereof, then the plaintiff is entitled to recover in this action, provided, you further find that he was in the exercise of such care as a reasonably prudent person could have used under like circumstances and was not guilty of any negligence contributing to such injury."

According to plaintiff's evidence, as well as under all the evidence, the accident was not caused by the failure of defendant to "furnish a sufficient number of men to do the work of lowering the lumber at the time and in the manner described in the evidence." Their expert, Dilloway, explicitly states that the four men left outside could not have controlled the sliding of the lumber "for the first few feet" after it had been shoved through the window beyond its center of gravity. Upon elementary mechanical principles, of which we take judicial cognizance, he might have stated with equal accuracy that no number of men holding a rope at right angles to a heavy log in a position to slide, could control its motion until in its downward course a

tension of the rope was reached. It is self-evident that the number of men employed to hold the rope, attached as described in this case, was wholly material, since the manner of holding the rope at right angles precluded the possibility of the prevention thereby of a sudden lunge of the piece of timber for a few feet. The instruction, *supra*, was therefore unsupported by any evidence in the case, and purporting, as it did, to authorize a finding for the plaintiff upon a hypothesis not raised by the proof, was misleading, and especially prejudicial in the present case where the evidence shows that the cause of injury was outside of the assumption in the instruction. *Gorham v. Railroad*, 113 Mo. 408; *Benjamin v. Metropolitan Street R'y Co.*, 50 Mo. App. 602. For the giving of this instruction the judgment must be reversed.

The only inquiry under the facts in this record was whether or not there was any negligence on the part of the defendant in furnishing only a rope and slide for the purpose of transferring the lumber from the street to the basement. As the evidence of Dilloway is open to some legitimate inferences that these appliances were not reasonable safe, we will remand as well as reverse the judgment. It is so ordered. All concur.