GRANT McLAIN, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, March 31, 1903.

1. **Railroads, Street:** DEMURRER TO EVIDENCE, PROPERLY OVERRULED. Whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from them, the case should be left to the jury. Applying this rule to this case, no error was committed in the trial by not withdrawing the case from the jury.

2. ————: RENEWAL OF DEMURRER AT CLOSE OF CASE: EFFECT OF. If defendant renews his demurrer at the close of all the evidence, and then prays the court to instruct the jury to find a verdict for him, he is entitled to a review of all the evidence on the question as to whether plaintiff has made a case.

3. ————: INSTRUCTIONS NOT MISLEADING, WHEN. In an action for injuries to a motorman by a collision with a car of another company at a crossing, the court charged that it was the duty of defendant company to use ordinary care to prevent collisions and to observe the provisions of the city ordinances which gave plaintiff's car the right of way, and that if defendant in the operation of the car which collided with plaintiff's car failed to give plaintiff's car the right of way, and negligently collided with plaintiff's car, by reason of which he was injured, plaintiff was entitled to recover. *Held,* that such instructions were not erroneous as misleading.

4. ————: ACCEPTANCE OF ORDINANCE BY COMPANY: INSTRUCTION. In an action for injuries to a street railway motorman by collision with a car of another company at a crossing, the fact that plaintiff proved that defendant had accepted a city ordinance which gave plaintiff's car right of way at the crossing, did not require an instruction on such subject, since the ordinance was binding on defendant without acceptance.

Appeal from St. Louis City Circuit Court—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Dawson & Garvin* and *Leonard Wilcox* for appellant. .

(1) The instructions as for nonsuit should have been given. Van Bach v. Railway, 71 S. W. 358; The Warren, 18 Fed. 559; The Sunnyside, 91 U. S. 208; The New York, 175 U. S. 205; Taylor v. Railway, 137 Mo. 367; Clark v. Railway, 127 Mo. 212; Wilder S. S. Co. v. Low, 112 Fed. 166; Railway v. Coerver, 112 Fed. 493; Rider v. Railway, 171 N. Y. 156; and other cases in argument; Watson v. Railway, 133 Mo. 251. (2) Instruction No. 3, on the measure of damages was erroneous, in submitting items of damage of which there was no evidence; evidence as to injuries which were not pleaded; in giving the jury a roving commission to allow speculative and conjectural damages and those which were possible merely. White v. Railway, 61 Wis. 541; Fry v. Railway, 45 Iowa 417; Curtis v. Railroad, 18 N. Y. 542; Strohm v. Railroad, 96 N. Y. 306; Bigelow v. Railway, 48 Mo. 373; Bradley v. Railway, 138 Mo. 295, 301; Morris v. Railway, 144 Mo. 500; Nixon v. Railroad, 141 Mo. 440; Evans v. Joplin, 76 Mo. 20.

*Jeptha D. Howe, Alphonso Howe* and *D. D. Holmes* for respondent.

(1) Defendant waived the demurrer in the first instance and the court, in passing upon the matter, will consider the whole evidence introduced. Edwards v. Railway, 94 Mo. App. 42; Jennings v. Railway, 112 Mo. 268. (2) This court has judicially determined that "it is a matter of common knowledge that cars running at ordinary speed can be stopped in less than one hundred feet." Stocks v. St. Louis Transit Co., 71 S. W. 130.

(3) And a peremptory instruction to find for defendant is permissible only when there is no testimony tending to support the plaintiff's case. Herman v. Larkin, 70 S. W. 907. (4) Failing to obey the ordinance was negligence *per se.* The plaintiff both alleged and proved the ordinance and its acceptance by defendant. He was not required to prove its acceptance, but he has certainly placed himself within all of the rulings of our appellate courts on this question, and we fail to see why appellant has had the temerity to raise this question at all. Gebhart v. Transit Co., 71 S. W. 448; Edwards v. Railway, 94 Mo. App. 40; Jackson v. Railway, 157 Mo. 621. (5) Appellant complains of the use of the word "may" in the instructions on the measure of damages, and claims that this gave the jury a roving commission. An instruction similar to this has been approved by this court in so late a case as Eberly v. Railway, 70 S. W. 381.

REYBURN, J.—This is an appeal by defendant from a judgment of the circuit court of the city of St. Louis in favor of plaintiff for the sum of $3,700 for personal injuries of a grave and permanent character inflicted on him by a street car of defendant striking a car of the St. Louis Transit Company. The catastrophe occurred about 4 o'clock in the afternoon of January 25, 1902, at the intersection of the double parallel tracks of defendant on Union avenue, extending northwardly and southwardly across Delmar avenue, and the double parallel tracks of the Transit Company on Delmar avenue, running eastwardly and westwardly across Union avenue in the city of St. Louis.

The plaintiff, in the performance of his duties in the employ of the Transit Company, was operating one of its cars as a motorman. The petition charges that the Transit Company had the right of way across the tracks of defendant at Union and Delmar avenues and it was the duty of defendant's servants in charge of its cars to wait before such crossing until the car of the

Transit Company had cleared it.   That while plaintiff was in charge of a car of the Transit Company and such car was being lawfully propelled eastward on Delmar avenue over the crossing and right of way, defendant's servants in charge of and operating one of its cars over its tracks on Union avenue, carelessly and negligently failed to wait before such crossing until it was cleared by the Transit car and carelessly and negligently so ran defendant's car upon such crossing and tracks of the Transit Company that they caused defendant's car to collide with the car of the Transit Company.   That at the time there was in force in the city of St. Louis, an ordinance giving the Transit Company the right of way over such crossing, and the right to cross its east-bound car first over such crossing, and defendant was prohibited from entering upon such crossing while it was in use by the Transit Company, and defendant's servants in charge of its car violated such ordinance by not waiting before such crossing until the Transit Company's car had cleared the crossing, and such violation directly contributed to cause the collision, and defendant, in consideration of its franchise from the city to operate its railway upon such street at such place, had agreed to obey the provisions of the ordinance.

Defendant's answer contained a general denial, and a general plea of contributory negligence, and further charged as specific acts of contributory negligence, that plaintiff so carelessly operated the Transit car as it approached, and went on the crossing that he caused it to collide with defendant's car; that he caused and permitted it to come in contact with and collide with defendant's car, by carelessly and negligently failing and omitting to look and listen for and watch defendant's car, and to use ordinary care to prevent the collision, when by so doing he might have avoided it, that he negligently failed to bring the Transit car to a stop before he ran it on the crossing, that the rules of the Transit Company, binding on plaintiff, provided that motormen

should not take any risk in crossing tracks at any point whether the company's cars had the right of way or not, and should be prepared to stop to avoid a collision, but plaintiff negligently and in violation of such rule ran his car on such crossing when there was a risk of a collision and so ran his car without stopping. The record reveals the following state of facts:

Some snow had fallen just prior to the casualty, but how heavily or whether it was then continuing, were controverted. However that may be, at the time stated, a car of the Transit Company approached from the west, moving eastwardly on the south track, a slight down grade, and when about two hundred feet west of Union avenue, its speed was reduced but its movement toward the crossing was continued. At the same time, a car of the Suburban Company drew near Delmar avenue from the south, moving northwardly on the east track and when about one hundred and twenty-five feet south of Delmar avenue, its speed was diminished but its progress towards the crossing continued, until it was about thirty or forty feet from the track of the Transit Company. When the car of the latter started to cross the intersecting tracks of defendant and had gotten partly over, the Suburban car struck the Transit car in front of its rear trucks west of the center of the latter car.

Plaintiff, on his own behalf, testified that when he first observed the Suburban car then about two hundred feet from the crossing, with the line of vision between unobstructed, he threw off the power, reducing the speed of his car to a rate, as he drew near Union avenue, not exceeding two miles per hour. That when he first observed the defendant's car, its motorman was nearly a block from the crossing and brought the car he was operating at about half rate of speed till within forty feet of the car of witness, when he further lessened the speed and then witness started his own car across at a speed of about two miles an hour, that he had observed

nothing wrong about the Suburban car, and its motorman was operating it in the usual way when about to stop, until the Suburban car had reached within thirty-five or forty feet and the Transit car was on the east track of the Suburban line, when its car shot forward with terrific speed, its motorman disappearing from its front end. Plaintiff, continuing, stated that he then threw half the power on his car at one movement, being all it would stand, in the effort to clear the crossing, as when he saw the Suburban car propelled forward at an increased rate of speed, he believed a collision imminent, and he tried to clear the crossing; that his own car was then moving without the power being on, and if he had reversed his car, it would have rendered it motionless, "paralyzed" for an instant, during which the Suburban car would have struck it in the front part; that he got a fraction over half way across when his car was struck and further personal knowledge of the occurrence on his part terminated by his injury. That his instructions and the custom there were, that the Suburban cars came to a stop, and allowed east and westbound Transit cars to have the right of way. This witness further stated that he could have stopped his car within eight feet when at the west line of Union avenue, which was about one-hundred feet wide and in the center of which the two parallel tracks of defendant are situated; that from the time he first perceived the motorman on the colliding car, he did not notice him putting the brake on or reversing the Suburban car, but he might have reversed his car without witness observing it, and from the way the Suburban car was drawing near, its motorman had no occasion to stop his car, and up to the time the Suburban car arrived within twenty-five or thirty feet of witness, it was moving at a reasonable rate of speed not exceeding four miles an hour; that its motorman could have easily stopped it. That the Transit Company had printed rules, which he had not read but knew, one of which was, at all crossings

east and west-bound cars have right of way but employees were cautioned not to take any risk in crossing tracks at any point and to reduce speed of cars before crossing and be prepared to stop in order to avoid a collision or accident.

Defendant's motorman testified that two or three inches of snow had fallen and at a distance of one hundred to one hundred and fifty feet he first observed the Transit car, that his own car was then acting all right and he then set his brakes which did not work, and the car began to slide from the snow on the tracks, and he then reversed the car but "she wouldn't take contact" there was so much snow on the track and the wheels were spinning backward; that he was trying to bring the car to a stop for fear of a collision and he did not bring the car to a stop before he hit the other car, because it was sliding and he could not; that when his car arrived within twenty-five or thirty feet from the Transit car, his power was reversed and his wheels were spinning backward but his car not going faster than before, and when he hit the Transit car, the latter was going about a couple of miles per hour; the collision stopped his car before it got on the Transit tracks, but the Transit car passed over the Suburban tracks before it stopped. This witness further stated that he remained at his post on his car until after the collision but did not remember which way, front or rear, he then got off, but he got off as soon as his car stopped, and went around to the Transit car; that the injuries sustained by his car consisted of the vestibule broken, the dashboard bent, and the controller broken, and after the occurrence it was operated by its own power to the sheds. That he examined the Transit car and noticed nothing broken but two windows. He admitted that the Transit car had the right of way over the crossing and that he had been in the habit of stopping and letting them go by, and it was his intention to stop and let this car pass; that under the conditions existing on that day he could not

stop his car in one hundred and twenty-five feet although there was an incline there to the Transit track, and he had a sand box; that it was his duty to stop his car and he meant to do it; that when he threw his brakes first at about one hundred and twenty feet from the crossing, he was going about seven miles an hour and the car began to slow up. Proceeding, he said that plaintiff was moving about a mile and a half an hour over the crossing, and in his oral testimony contradicts the statements contained in a deposition to the effect that the front of the platform of plaintiff's car was over the west crossing when the car of witness began to slide, and says that he thought he had a clear crossing, saw no car and approached the crossing with the intention not to stop. On redirect examination, he states he was about three or four car-lengths from the crossing when he saw plaintiff's car. The testimony of disinterested witnesses confirmed the description of plaintiff as to how the collision was brought about, one witness, who was walking east, especially corroborating his testimony on the principal and substantial points. The testimony of disinterested witnesses further showed that the Transit car was struck near the center and badly injured, that two other cars were required to remove it, one witness stating it was almost broken in two, and all that the windows and sides were broken and smashed in and that the platform and front of the Suburban car were also smashed in.

The conductor of defendant's car in testifying, stated he first saw the Transit car when the latter was distant one hundred and fifty feet west of Union avenue; that his own car was then running more slowly than it had been; that defendant's motorman was working the brakes and sand lever without appearing to reduce the speed owing to the bad condition of the rail caused by the snow fall; that the car of the Transit Company came on from the west and reached the crossing before they did and at the time the cars collided, his car was going

at about the same rate of speed, that is, as the Transit car; that between the time when his car hit the Transit car and he first saw the Transit car, the speed of his car had not increased but if anything, had diminished. Continuing, he said his motorman was on the front platform when the cars came together and he got off the rear platform, and went around to see if his motorman was injured, but found him unhurt and repeated that his motorman was on the front platform at time of the collision and was not hurt at all, not even scratched, and did not go back into the car; that the front end of his car was pretty badly wrecked; that it collided with the other car and only broke two glasses; that his car bounded back two or three feet after it struck the Transit car.

At the close of plaintiff's evidence and at the close of all the testimony, defendant asked an imperative instruction to the jury to find a verdict in its favor, which the court refused. The court also refused a series of instructions prayed by defendant, which will be considered hereinafter so far as deemed necessary, and instructed the jury as follows:

"1.   It was the duty of the defendant company in the operation of its cars to use ordinary care to prevent collision and to observe that provision of the city ordinance which gives to the east and west-bound cars the right of way at intersecting points over north and south-bound cars.

"It was at the same time the duty of the plaintiff in the operation of the east-bound car to exercise for his own protection ordinary care to avoid a collision and notwithstanding his right of way—because of his being on an east-bound car—it was his duty to avoid a collision if he saw danger ahead or in the exercise of ordinary care would have seen danger in time to have stopped his car or otherwise have averted the accident, and if you believe from the evidence plaintiff failed to exercise such care or perform such duty, and that such

failure in any way contributed to his injury, then he is not entitled to recover.

"2. By 'ordinary care' is meant such care as a person of ordinary prudence would under the same or similar circumstances exercise. The absence of such care is negligence.

"If, therefore, from the evidence you believe that the defendant company operated upon a public open street of St. Louis the car which collided with the car of the Transit Company and that in its operation at the time of the accident the defendant company, by its servants or employees in charge of said car, failed to give to the east-bound car the right of way, and negligently ran its car so as to collide with the east-bound car and that by reason of such collision the plaintiff was injured, and that he was himself at the time of the accident exercising ordinary care for his own protection as herein defined, then your verdict should be for the plaintiff.

"The burden of proving any negligence of defendant or failure to observe the city ordinance regarding the right of way is upon the plaintiff throughout the entire case to establish it by a preponderance or greater weight of the testimony. The burden of so proving any contributory negligence on the part of the plaintiff is upon the defendant.

"3. If your verdict is for the plaintiff you will assess his damages at such a sum as from the evidence you believe will fairly compensate him for any injury of person which he has suffered by reason of the said accident, considering whether you believe any such injury is temporary or permanent: For any pain of body or mind which from the evidence you believe he has suffered or may suffer, by reason of the said accident: For any earnings which from the evidence you believe he has lost or may lose by reason of the accident; for any expenses for medicines or medical attention or care which you may believe from the evidence have been necessitated or may be required by him by reason of the

said accident considering the fair and reasonable value thereof.

"If your verdict is for the defendant you will simply so state in your verdict."

1. Defendant strenuously insists that the plaintiff should have been nonsuited; any objection that the plaintiff's testimony did not make out a prima facie case and that in consequence the instruction by way of demurrer to the evidence at close of plaintiff's testimony should have been given, was waived by the subsequent introduction of the evidence on behalf of defendant, but the refusal of a similar instruction asked at the close of all the testimony requires a review of the evidence as a whole. Jennings v. Railroad, 121 Mo. 268; Hilz v. Railroad, 101 Mo. 42. Such an instruction is warranted only where there is no testimony before the court from which a different conclusion can be reached, and in determining whether the cause should go to the jury, plaintiff is entitled to the benefit of the most favorable view of the facts and of every reasonable inference therefrom. Buck v. Railroad, 108 Mo. 179. "Whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from them, the case should properly be left to the jury and that, in order to withdraw such a case from the jury, the facts should not only be undisputed but the inferences in respect of the defendant's failure of duty which arises from these facts should be undisputable." 2 Thompson, Trials, sec. 1663. In this aspect, and applying the foregoing well-established rules, no error was committed in refusing to withdraw this case from the jury: the testimony on plaintiff's behalf strongly tended to establish that the collision was attributable to the negligence of the motorman of defendant in the conduct of his car at the crossing and the record is replete with contradictory, inconsistent and improbable statements so that to

the jury as triers of the facts and judges of the credibility of the opposing witnesses, were properly referred the issues for determination.

2. The instructions given are assailed as misleading and erroneous and it is charged that the first tells the jury that it was defendant's absolute duty to observe the ordinance, which is again referred to in instruction 2 in such a manner, especially when taken together as to imply that a mere violation of that ordinance is negligence *per se*. We can not perceive the force of this contention or that these instructions either separately or together are in anywise infected with the vice condemned in Gebhardt v. Transit Company, 71 S. W. 448, by this court, cited by appellant. Nor is the second amenable to the charge preferred that it ignores the qualifying and closing paragraph of the ordinance, for there was no issue in the pleadings of a wanton or willful collision, and certainly no evidence of any such conduct on the part of plaintiff.

3. It is urged that plaintiff, having alleged that defendant had accepted the ordinance referred to in the petition, and thereby made proof thereof material, the instructions should not have been silent as to this issue. In his proof the plaintiff, exceeding the bounds within which he might safely have confined his testimony, introduced proper evidence of the acceptance by defendant of the ordinances tendered and no evidence otherwise or instruction relating to such acceptance was introduced or sought by defendant. Nor can we recede from the position of this court so recently assumed in the Gebhardt case, supra, or yield to the contention that the ruling in Jackson v. Railroad, 157 Mo. 621, did not undermine the Fath case or if it appeared to have such effect, all that the Supreme Court said in the Jackson case about the principle of the Fath case was outside the decision, for the judgment in the Jackson case in favor of plaintiff was reversed without remanding the cause for failure of proof of defendant's negligence.

It would seem manifest that in the critical review of the doctrine first announced in the Fath case and subsequent cases in which it was followed, contained in the decision in the Jackson case, that the Supreme Court concluded that a departure had been made from numerous prior decisions of the court, to which reference is had and that the Fath case should be and was expressly disapproved and vigorously condemned.

4.   In an action for personal injuries, the right of recovery is not limited to past bodily pain and suffering, but the party is also entitled to compensation for such future sufferings as the evidence tends to prove will result from the injuries.   The plaintiff was permitted to introduce the testimony of medical experts to establish the probable consequences of his injuries and their permanent character and the court in its instructions, allowed as an element of damages, such pain of mind or body as he might suffer as well as compensation for such he had suffered, and this constituted no error.   In determining the amount of damages from a personal injury, the jury are justified in considering not only the bodily pain and mental suffering already undergone, but such as are likely to result in the future.   1 Sedgwick, Damages, sec. 86; 1 Sutherland, Damages, sec. 253; Gorham v. Railroad, 113 Mo. 408.

5.   Defendant finally contends that the instructions improperly permitted the jury to take into consideration expenses for medicines or medical attention, but the testimony of the plaintiff was that he was in a hospital of his own choice after he left the first hospital to which he was transported by the Transit Company immediately after the casualty, and that he had incurred and paid for medical treatment.   Gorham v. Railroad, supra.

The issues in this cause, under the pleadings and evidence, were clearly presented and in nowise complex, the instructions were commendably comprehensive, lucid and concise and the judgment is affirmed. All concur.