HENRY WYSE, RESPONDENT, v. DR. R. P. MILLER, APPELLANT.*

Kansas City Court of Appeals. February 13, 1928.

*Corpus Juris-Cyc. References: Agency, 2CJ, p. 436, n. 79.; p. 441, n. 22; Appeal and Error, 4CJ, p. 1032, n. 36; p. 1037, n. 83; Estoppel, 21CJ, p. 1209, n. 59; Evidence, 22CJ, p. 191, n. 70; p. 935, n. 51.

*Manard & Schwimmer* (*Fred E. Bredehoff*, of counsel) for respondent.

*Watson, Gage & Ess* for appellant.

FRANK, C.—Action to recover damages for breach of contract. This cause originated in the justice court of Jackson county where plaintiff recovered judgment. On appeal to circuit court, plaintiff again recovered judgment against both defendants. Defendant Dr. R. P. Miller appealed.

On October 21, 1921, plaintiff and Kansas City Industrial Hospital Association entered into a written contract by the terms of which plaintiff agreed to pay said hospital association $1 per month, in advance, for which said hospital association agreed to give plaintiff, his wife, and other members of his family, free from all expense, surgical and medical treatment for sickness and accidents requiring hospital treatment including board, bed, nurse, medicine, dressings, operations, laboratory examinations and X-ray.

Plaintiff was a coal miner residing at Camden, Missouri, and a member of a local union of the United Mine Workers of America located at that place. The plan of defendant hospital association was to induce all coal miners in Missouri, who were members of a local union, to enter into a contract with it for free hospital services, similar to the contract made with plaintiff. The evidence shows that defendant had such contracts with members of some twenty or twenty-five different local unions located in various parts of Missouri.

The financial secretary of each local union would collect $1 per month from members having hospital contracts, retain ten per cent of the amount collected for his services in collecting it, and remit the remaining ninety per cent to the hospital association.

The universal custom and practice followed in the collection of these hospital dues was to check them off, that is, hold the amount of the dues out of the miners wages.

When the mines were not operating, the dues would not be paid, but when the mine resumed operation the delinquent dues which ac-

crued while the mine was idle, would be checked off the miners wages on pay day, and remitted to the hospital association. Plaintiff's dues were collected in this manner.

On one occasion, prior to the time in question, plaintiff was delinquent in his dues for a period of seven months. In May, 1923, these delinquent dues amounting to $7 were checked off plaintiff's wages and remitted to the hospital association. The association accepted and retained these dues without objection.

Plaintiff was delinquent in his dues for June, July and August, 1923. On August 17, 1923, these delinquent dues were collected by the secretary of plaintiff's local union, and with other hospital members' dues were remitted to the hospital association on September 17, 1923. The association accepted these dues without objection and still retains them.

Plaintiff's wife had been treated by Mr. Miller in November, 1922. At that time he told her that she needed a surgical operation and requested her to come to the hospital and have the work done as soon as she got strong enough. On August 20, 1923, plaintiff took his wife to the hospital for the purpose of having this operation performed. Dr. Miller refused to perform the operation unless he was paid a cash fee for it. He testified that he refused to do the work because plaintiff was delinquent in his hospital dues, and he so told him at the time. Plaintiff and his wife both testified that plaintiff, at the time, told Dr. Miller that he was a member of the local union at Camden, Missouri, and a member of the hospital association in good standing; that Dr. Miller said nothing about delinquent dues but refused to operate on plaintiff's wife unless he was paid a cash fee therefor.

When Dr. Miller refused to operate on plaintiff's wife, plaintiff took her to the Trinity Lutheran Hospital, where she was operated on by Dr. Norberg. The cost of this operation and the hospital expenses incident thereto was $292.55 which plaintiff paid.

It is not shown that defendant hospital association was a corporation. Plaintiff and his wife testified that they were present at the trial of this cause in the justice court and Dr. Miller there testified that he was the sole owner of the hospital. At the trial in the circuit court, Dr. Miller testified that the United Mine Workers of America did not receive any of the money collected, and was not liable in any event for any cost or expenses incurred in the operation of the hospital; that it was up to him to pay all hospital expenses.

Other facts will be stated in connection with the points discussed.

It is contended by appellant that the court erred in refusing to give his requested instruction in the nature of a demurrer to the evidence.

This contention is predicated on three grounds, the first of which is, that there was no substantial evidence of the reasonable value of the services rendered to plaintiff's wife by Dr. Norberg.

The evidence is that the charge for this service was $292.55 and plaintiff paid it. It is true that there is no direct testimony that this charge was reasonable, but the presentation of the bill and its payment by plaintiff was some evidence that the charge was reasonable. [Abbot v. St. Louis Transit Co., 104 Mo. App. 534, 540; Nelson v. Metropolitan Street Rys. Co., 113 Mo. App. 659, 663; Giblen v. Terminal Railroad Association of St. Louis, 208 Mo. 208, 224, 101 S. W. 37, 42.] An examination of the cases in this State which have been reversed on account of lack of proof of the value of medical services, will show that in all such cases, there was no proof as to what was charged or paid. [Abbot v. St. Louis Transit Co., supra.] "In the absence of other evidence, cost is competent as tending to show value." [Abbot v. St. Louis Transit Co., supra.]

The second and third grounds of defendant's insistence that the demurrer to the evidence should have been sustained are that there was no evidence that plaintiff's hospital dues were paid to Dr. Miller on or before August 20, 1923, or that J. W. Greer, secretary and Robert Walker, treasurer of the local union at Camden, Missouri, were agents of Dr. Miller in collecting hospital dues from plaintiff.

A pamphlet entitled, "Kansas City Industrial Hospital Association," was introduced in evidence by defendant Dr. Miller. This pamphlet contained questions and answers relative to the hospital association calculated to induce members of local unions to become members of the hospital association. Among the questions contained in this pamphlet, we find the following:

"Q. How are the monthly dues of $1 per month collected? A. Through the financial secretary of your local union, who remits to the hospital association once a month for all hospital members in that local."

On this subject Dr. Miller testified:

"Q. Is it true Dr. Miller that the financial secretary of the local union at Camden, Missouri, would collect the dues for the hospital association month after month and year after year. A. Yes, sir.

"Q. And that the financial secretary would deduct ten per cent for his services in collecting that money. A. Yes, sir.

"Q. And then the other ninety per cent of the money collected would be turned over to you by check, and that check signed by the treasurer of the local union? A. Yes, it was done as a local union affair.

"Q. Ninety per cent was turned over to you? A. Yes.

"Q. It was turned over to you by check, and you endorsed every one of these checks? A. Yes, I did.

"Q. And deposited them in the bank in your own name? A. I did."

While there is no direct evidence of a contract between the hospital association and the local union or any of its officers, as to the collection of these dues, yet the hospital association advertised in its

literature that the dues would be collected by the secretary of the local union and such was the universal custom and practice during all the years the hospital operated. Dr. Miller knew this, and with such knowledge, accepted and retained all dues so collected without objection. The dues were collected for the hospital association. The local union had no interest in them. Agency may be established by conduct between the parties. [Central Trust Company v. Bridges, 6 C. C. A. 539, 550; 2 C. J. 435, sec. 32; Roberson v. Clevenger, 111 Mo. App. 622, 625; Mosby et al. v. Commission Company, 91 Mo. App. 500.]

The purpose of members of the hospital association in paying $1 per month was to be in a position to obtain hospital service when needed. The association by its literature invited members to pay their dues to the secretary of the local union, and this was the custom and practice, known and acquiesced in by defendant. Under these circumstances, payment to the secretary of the local union was payment to defendant.

It is also claimed that even though the secretary of the local union, was the agent of defendant, he had no authority to waive prompt payment of dues in advance, as provided in the contract.

. Plaintiff's dues for June, July and August, 1923, were received by defendant on September 17, 1923, without objection and he still retains them. Defendant's acceptance of the money after the date it was due, and his failure to return or offer to return it, estops him from insisting on a forfeiture of the contract because the dues were not paid when due.

The contract in suit was signed "Kansas City Industrial Hospital Association" by Tom Allison, agent.

It is insisted that the contract was improperly admitted in evidence because there was no proof that Allison was the agent of defendant or was authorized to make the contract on its behalf. While there is no direct evidence that Allison was the authorized agent of defendant at the time the contract was made, yet defendant's entire evidence shows that he recognized the existence and validity of the contract at the time it was executed, but claims plaintiff's rights thereunder were forfeited because of non-payment of dues. Dr. Miller testified that if plaintiff had paid his delinquent dues to him on August 20, 1923, the day he brought his wife to the hospital for an operation, he would have done the work. Defendant's contention recognizes the validity of the contract in the first instance, there is, therefore, no merit in the contention that Allison was not authorized by defendant to make the contract on its behalf.

Contention is made that plaintiff's instruction No. 1 is erroneous (1) because it assumes that Allison was the agent of appellant in making the contract with plaintiff, (2) it failed to require a finding that the $5, initiation fee required by the contract was paid, (3) that

it assumed that the officers of the local union were agents of appellant, and (4) that it assumed that the time for payment of dues under the contract was waived.

We have already held that defendant recognized the validity of the contract between plaintiff and defendant, in the first instance. This holding disposes of the first and second objection lodged against this instruction.

The delinquent hospital dues which plaintiff owed defendant were collected by the officers of the local union and remitted to defendant. Defendant accepted these delinquent dues and at no time has returned or offered to return them to plaintiff. The retention of these delinquent dues, ratifies the act of the officers of the local union in collecting them and estops defendant to claim a forfeiture of the contract because the dues were not paid when due. [Goodwin v. National Council Knights & Ladies of Security, 166 Mo. App. 289, 298; Wagner v. Security Benefit Ass'n, 276 S. W. 81, 83.]

It is contended that plaintiff's instruction No. 3 was erroneous because (1) it permitted the jury to determine what acts of defendant, if any, authorized the officers of the local union to accept delinquent dues from plaintiff, and (2) it assumed that the officers of the local union were agents of appellant.

There would be merit in appellant's complaint against this instruction, but for the fact that defendant now has in his possession the hospital dues paid by plaintiff for the period of time in question. Defendant says that he refused to operate on plaintiff's wife on August 20, 1923, because plaintiff's dues for June, July and August of that year were not paid. It is true that these dues were not in the possession of defendant on the day that plaintiff's wife applied to defendant for hospital service, but they had been paid to the secretary of the local union at Camden, Missouri, prior to that time. On September 17, 1923, the secretary of the local union remitted these dues to defendant, who accepted them without objection, and at no time has returned or offered to return them. So long as defendant with full knowledge of all the facts, retains the dues in question, it is immaterial whose agent collected them or when they were paid. Defendant will not be permitted to retain the dues collected, and at the same time claim their collection was unauthorized. For these reasons, the error, if any, in instruction No. 3 was not prejudicial.

It is contended that instruction No. 5 given at the request of plaintiff was erroneous in that it fixes the measure of plaintiff's damage at the amount expended by him in an attempt to cure his wife, instead of the reasonable value of the services rendered to her at the Trinity Lutheran hospital.

A like question was before the Supreme Court of this state in Gorham v. Kansas City & Southern Ry. Co., 113 Mo. 408, 421, 20 S. W. 1, c. 1063, whereat the court said,

"The instruction would have been more accurate had it called for a recovery of the reasonable value of the necessary medical aid rendered to plaintiff, instead of 'such sums as he has paid out for medical attention on account of said injury, if any.' But we do not regard such an error as materially prejudicial to the substantial rights of the defendant upon the merits, and hence consider it no ground for a reversal of the judgment, in view of the positive terms of the statutes to that effect. [Revised Statutes, 1889, secs. 2100 and 2303.]"

The St. Louis Court of Appeals, speaking to a kindred question in Grady v. St. Louis Transit Co., 76 S. W. 673, 674 said,

"The same instruction is censured for failure to limit plaintiff's recovery to the reasonable amount incurred for medical services. The testimony of plaintiff's attending physician expressly stated that the amount named as his charge was reasonable, and this was not controverted by defendant, although a physician in its employ subsequently appeared as a witness in its behalf. The instruction might with exactness have called for the recovery of the reasonable value of the medical aid rendered plaintiff, but we do not consider that the language adopted materially affected the merits of the action or the substantial rights of defendant. [Rev. St. 1899, secs. 659, 865; Gorham v. Railway, 113 Mo. 421, 20 S. W. 1060.]"

Dr. Norberg charged and plaintiff paid $292.55 for surgical and medical treatment and hospital care given his wife, and plaintiff paid it. Absent other evidence, cost is competent as tending to show value. [Abbot v. St. Louis Transit Co., supra.] Dr. Miller testified as a witness in his own behalf, but did not question the reasonableness of this charge. In view of this fact, and in the light of the authorities above cited we hold that the instruction as given did not materially affect the substantial rights of defendant.

We find no reversible error in the record, and therefore, affirm the judgment. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.