MACK DYE, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Respondent, No. 41935—234 S. W. (2d) 532.

Division Two, December 11, 1950.

*Justin Ruark* and *Edward V. Sweeney* for appellant.

*E. G. Nahler, Frank C. Mann, C. Wallace Walter* and *Mann, Mann, Walter & Powell* for respondent.

[532]   WESTHUES, C.—This is a personal injury action. Appellant, plaintiff below, by a jury verdict was awarded $40,000

damages. The trial court granted a new trial assigning as grounds therefor that the verdict was so excessive as to indicate bias and prejudice against the defendant. Plaintiff appealed.

The sole question for decision is whether the trial court in granting a new trial exercised sound judicial discretion as the defendant contends or whether, as plaintiff says, such action constituted an abuse of such discretion.

A brief statement of the facts will suffice. At about 3:30 o'clock on the morning of December 28, 1948, plaintiff went to the station of the defendant at South Greenfield, Missouri, for the purpose of going to Springfield, Missouri, on one of defendant's passenger trains. A train was due at 3:45 a. m. As the train was in the course of stopping for the station, plaintiff was walking on the platform toward the point where he expected to board the train. Just before the train came to a standstill, plaintiff stepped on an iron railroad spike and fell toward the train; one wheel of one of the cars passed over his left foot. Plaintiff's charge of negligence was that the defendant's station platform and station grounds were improperly lighted which caused plaintiff "to stumble over said spike while using said station as a passenger * * *."

There was evidence pro and con on the question of negligence which we need not review on this appeal. Plaintiff in his brief says, "The crux of this appeal, determining the propriety of the court's order granting the defendant a new trial, depends principally upon the plaintiff's injuries, permanent disability and his pain and suffering resulting from those injuries." We agree. Plaintiff's injuries were about as follows: After plaintiff was removed from under the train, he was taken by ambulance to the Baptist Hospital at Springfield, Missouri, where his leg was [533] amputated. He remained in the hospital from December 28 to January 9, when he was taken to a private home in Greenfield. Infection developed and on January 18, plaintiff was taken to Dr. Cowan's hospital in Greenfield where he remained until March 30. The infection caused the flesh around the stub to slough away so that the bone was left exposed. Plaintiff was then taken to St. Vincent's Hospital in Monett where his leg was reamputated on May 20. This last amputation was made about three inches below the knee. He remained in St. Vincent's Hospital about fifteen days. As may be expected in such cases plaintiff experienced severe pain while he was undergoing treatment and the amputation. He testified that he has suffered much pain since the operation; that he cannot sleep regularly and is extremely nervous. Plaintiff claims that he has been totally disabled from performing manual labor. Plaintiff at the time of the trial was wearing an artificial limb. He testified that he could wear it for only three or four hours at a time because of irritation and pain in the stub.

Dr. Frank T. Kerr and Dr. Fred Farthing performed the second operation. Dr. Kerr testified as a witness for plaintiff. He was questioned with reference to plaintiff's condition. A portion of the doctor's evidence was as follows:

"Q. And what do you think about the leg as it is now, doctor?

"A. Well, he seems to have a good anatomical result in so far as a pad. We have the bone well covered and it should give him a good result. However, he does have an area of tenderness on it underneath the surface of the stump which I diagnosed as nerve that has scar tissue around it, a pinched nerve that is causing some pain.

\* \* \* \* \*

"Q. Has he complained to you of pain in his back any, doctor?

"A. The pain in his back? Yes, he has been trying to break in an artificial leg, and he has pain in the back. I feel this pain is due to his favoring the amputated leg and throwing himself out of line trying to balance himself, steady himself. He has caused a muscle spasm. His back is giving him some pain.

\* \* \* \* \*

"Q. Now, doctor, do you have an opinion considering your experience as a physician and surgeon and your knowledge and treatment and observation of this man, as to whether he will have pain and discomfort in the future?

"A. Well, I think, yes, without question he will continue to have pain. He will continue to have these areas of ulceration over the stump of his leg.

\* \* \* \* \*

"Q. Is it your opinion that in getting around with either the artificial limb or with crutches without the limb that he will continue to have pain and discomfort in his leg from this compensation that you speak of?

"A. He will continue to have pain in the leg. I feel that his pain in his back will have a tendency to become less severe as the years go by. In other words he will become more accustomed to this in future years to where he won't be throwing his back into such a strain and therefore the pain will minimize."

The loss of a leg is a permanent injury. Plaintiff was a laboring man and earned about $35 per week. There is no doubt that plaintiff has suffered a major injury and has sustained substantial damages. To adjust himself to his present condition will not be an easy task. Plaintiff when injured was 42 years of age. He

testified that he had had three years of high school education. Plaintiff while materially handicapped through the loss of a leg will nevertheless be able to follow some gainful occupation.

The trial court had a better view of the situation and of all the circumstances and, therefore, was in a more advantageous position to determine whether the verdict should stand. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S. W. (2d) 333, l. c. 340(15, 16). This court has on various occasions encouraged trial judges to assume the function of exercising their discretion on questions of this nature. Yakubinis v. [534] Missouri-Kansas-Texas R. Co., 345 Mo. 943, 137 S. W. (2d) 504, l. c. 506(7-9); Ziegelmeier v. East St. Louis & Suburban Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027, l. c. 1030(7). In the first case cited, Division I of this court said, 137 S. W. (2d) l. c. 506(7-9): "The trial court also had observed the respondent and heard the testimony of the doctors. It is in a better position to determine whether the verdict is excessive. We are disposed to bow to its judgment, except for the unfortunate practice which we recognize has arisen in some of the circuits under which the trial judge declines to interfere with the amount of the verdict, no matter how excessive, on the ground that the appellate court will ultimately determine the matter. This practice should not be continued." In the second case cited above, Division II of this court said, 51 S. W. (2d) l. c. 1030(7): "The winning party in a lawsuit usually argues before the trial court, on the motion for a new trial, that a question of fact is for the jury and a verdict ought not to be set aside in a case where there is evidence to support it. On appeal, the argument is made that the trial court refused to set aside the verdict as being against the weight of the evidence. Trial courts should, therefore, assume that responsibility, and whenever, in their judgment, the verdict is clearly against the greater weight of the evidence grant a new trial on that ground."

A trial court in granting a new trial in cases of this nature exercises judicial discretion. Appellate courts do not interfere with such actions unless it can be said that there was a clear abuse of such discretion. Dodd v. Missouri-Kansas-Texas R. Co., 354 Mo. 1205, 193 S. W. (2d) 905, l. c. 906, 907(1) (2); Bailey v. Interstate Airmotive, Inc., supra, 219 S. W. (2d) l. c. 339, 340(10, 11) (12-14); 5 C. J. S. 535, Sec. 1626. The party complaining has the burden of showing there was an abuse of discretion. 5 C. J. S. 476, Sec. 1584.

Plaintiff cited a number of cases in support of his contention that the verdict of $40,000 is not excessive. Plaintiff also says that even if this court should deem the verdict excessive, a remittitur should be ordered.

The record shows the following with reference to the court's order granting a new trial:

"THEREAFTER, and on the 16th day of February, 1950, the Court placed the following ORDER OF RECORD:

'Motion for new trial sustained because the verdict of the jury is so excessive as to indicate bias and prejudice against defendant, unless within ten days plaintiff enter into a remittitur in sum of $22,000.00, reducing judgment to sum of $18,000.00.'

\* \* \* \* \*

"THEREAFTER, and on the 14th day of February, 1950, the Court placed the following ORDER OF RECORD:

'After counsel for plaintiff and defendant appear at plaintiff's request, in connection with the judgment entered on February 6, 1950, said judgment is hereby changed to read as follows: ("Motion for New Trial ·sustained because the verdict of the jury is so excessive as to indicate bias and prejudice against defendant").' "

The orders of the trial court indicate the court was under the impression that if bias and prejudice were present, then the only remedy would be a new trial. In this the court was correct. This court in Bailey v. Interstate Airmotive, Inc., supra, 219 S. W. (2d) l. c. 340 (12-14), said: "It is clear there is a vital distinction between mere excessiveness (or inadequacy) of an award, and such excessiveness (or inadequacy) as would indicate a verdict was the result of bias and prejudice; the former may be but an honest mistake of the jury, while the latter savors of misbehavior on the part of the jury. A fair, dispassionate and impartial consideration of the evidence by a jury is vital to a verdict's incipient validity. Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. (2d) 304; Jones v. Pennsylvania R. Co., supra, 353 Mo. at page 172, 182 S. W. (2d) at page 159, and cases there cited." See also 66 C. J. S. [535] 250, 251, Sec. 76 (d), and notes 10 and 11.

It has frequently been held on appeal that an excessive verdict does not of itself show bias or prejudice. A trial court, however, is in a position to find from all the circumstances of the trial that bias or prejudice entered into the case. Many matters that do not appear of record may be observed by the trial court. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. (2d) 157, l. c. 159.

From the record before us, we cannot say the trial court abused its discretion in granting a new trial.

The order granting a new trial is therefore affirmed. Bohling and Barrett, CC., concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.