Ross E. MYERS, an incompetent person, by Gene Myers, the guardian of his person and estate, Respondent,

v.

Nathan KARCHMER, William H. Karchmer and Jerome A. Caplan, partners doing business under the firm name of Karchmer Company and Lela M. Daniel, Administratrix of the Estate of Delbert L. Daniel, Appellants.

No. 46271.

Supreme Court of Missouri,

Division No. 1.

May 12, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied June 9, 1958.

Allen, Woolsey & Fisher, Clarence O. Woolsey, Joe N. Brown, James H. Keet, Springfield, for appellants.

Frank C. Mann, Glenn A. Burkart, Mann, Walter, Powell & Burkart, Springfield, for respondent.

DALTON, Judge.

Action for damages for personal injuries and property damage sustained by plaintiff when defendants' truck collided with plaintiff's truck at the intersection of Highways 160 and M, approximately four miles south of Springfield, Missouri. Plaintiff sought to recover on the primary negligence of de-fendants' truck driver in failing to stop at a stop sign before entering upon Highway 160. Defendants defended on the theory that the operator of defendants' truck at the time and place in question was not acting within the scope of his employment; and that plaintiff was guilty of contributory negligence, as hereinafter stated. Verdict and judgment were for plaintiff for $150,-000 for personal injuries and $1,795 for property damages. On motion for a new trial, a remittitur of $50,000 was conditionally ordered and made and judgment was entered for plaintiff for $101,795. Defendants have appealed.

Appellants assign error (1) on the admission in evidence of a deposition; (2) on the overruling of defendants' motion for a directed verdict at the close of all the evidence; (3) on the giving of instructions 2 and 3; (4) on the alleged misconduct of a juror; and (5) on the approval of the verdict. The facts will be stated with reference to the specific assignments.

The first assignment is that the court erred in admitting the deposition of Linza Bilyeu in evidence, "because the deposition itself does not show Linza Bilyeu to have been a resident of a county other than Greene County, the county in which the case was tried, and because plaintiff introduced no evidence as a condition precedent to the deposition's admission to establish the above fact as a basis for the use of the deposition."

The sole objection interposed, when the deposition of Linza Bilyeu was offered and admitted in evidence, was that "it does not show that he is a non-resident of Greene County." Defendants insisted that the deposition was inadmissible under Section 492.400 RSMo 1949, V.A.M.S., which states the circumstances under which a deposition "may be read and used as evidence in the cause." The objection was overruled and the deposition admitted. Section 492.400, supra, provides: "The facts which would authorize the reading of the deposition may be established by the testimony of the de-

posing witness * * *." One of the grounds for use of the deposition is, "(4) If he reside in a county other than that in which the trial is held * * *."

The testimony of the witness, as shown by the deposition, was to the effect that he resided with his father on a farm one mile north of Nixa, on Highway 160; that he was engaged in the trucking business, "just wildcatting freight"; and that he was then home for two days during the December holidays. When asked "in what county" his father's farm was located, he answered: "A. Greene—or *it is in Christian*. Q. Christian County; your work keeps you away from home practically all the time? A. That's right." (Italics ours).

Appellants insist "there is no testimony by the witness that he is a resident of Christian County"; and further say that "the plaintiff was required to introduce evidence in addition to any facts contained in the deposition to establish the fact that Linza Bilyeu was a resident of a county other than Greene County before his deposition could be admitted in evidence." Appellants have cited some fifteen cases, but none of the cases cited support their position, if the evidence in the deposition is sufficient to meet the provision of the statute.

■ The deposition was taken on December 19, 1956, and it was offered in evidence on March 15, 1957. The fact testified to, to wit, residence in Christian County, was a fact somewhat of a continuing nature and not similar to testimony as to the existence of a present intention to leave the state at some future date, which intention may or may not have been carried into effect before the deposition was offered in evidence as in Gaul v. Wenger, 19 Mo. 541. And see Missouri Power & Light Co. v. City of Bucklin, 349 Mo. 789, 163 S.W.2d 561, 563(2, 3, 4). Whether the testimony was sufficient to show that the witness was a nonresident of Greene County rested largely within the discretion of the trial court. Boyle v. Crimm, 363 Mo.

731, 253 S.W.2d 149, 155(3); Taylor v. Laderman, 349 Mo. 415, 161 S.W.2d 253, 257. No abuse of the court's discretion appears and his conclusion is supported by substantial evidence. See Collins v. Leahy, 344 Mo. 250, 125 S.W.2d 874, 880(4). Further, the record here shows that, subsequent to the admission of the deposition, additional evidence was offered showing that the farm on which the witness resided was located in Christian County, 2.5 miles south of the Greene County line. The error, if any, in admitting the deposition prior to such further showing was not prejudicial to defendants and no reversible error appears. Felker v. Breece, 226 Mo. 320, 126 S.W. 424, 426.

■ Appellants next contend that "the court erred in overruling the defendants' motion for a directed verdict at the close of all the evidence because the plaintiff was guilty of contributory negligence as a matter of law because of his failure to keep a vigilant lookout * * * failure to stop, slacken his speed, swerve to the right or sound a warning signal * * * and because his operation of his vehicle * * * constituted a complete indifference to danger." The record presented here fails to show that any of these grounds for sustaining the motion were ever presented to and ruled upon by the trial court. The motion as presented to the court at the close of all the evidence stated no grounds therefor (see Section 509.280 RSMo 1949, V.A.M.S.) and it does not appear from the transcript on file that the court was advised as to the particular grounds upon which such relief was sought, or that relief was sought on the grounds now stated.

Section 512.160(1) RSMo 1949, V.A.M.S., expressly states that "apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted by the trial court, no allegations of error shall

be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Under Section 510.210 RSMo 1949, V.A.M.S., "formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take * * * *and his grounds therefor* except it shall not be necessary to state grounds for objections for instructions; * * *." (Italics ours.) And see Oganaso v. Mellow, 356 Mo. 228, 201 S.W. 2d 365, 366; Rosebrough v. Montgomery Ward & Co., Mo.App., 215 S.W.2d 295, 298; Palmer v. Security Ins. Co., Mo. App., 263 S.W.2d 210, 213(3); 42 V.A. M.S. Supreme Court Rule 3.23.

While defendants' motion for a new trial assigns error on the court's action in overruling defendant's motion for a directed verdict at the close of all the evidence, there is nothing in the motion for a new trial to indicate that the trial court was ever advised that such relief was sought on the ground that plaintiff was guilty of contributory negligence as a matter of law. While this court appears to have taken the position that the sufficiency of the evidence to make a submissible case is a question open for determination upon every appeal, if failure to rule that issue will result in manifest injustice or a miscarriage of justice, no request has been made for the consideration of this issue under Supreme Court Rule 3.27. See Oganaso v. Mellow, supra; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 77(11); Nelson v. Kansas City, 360 Mo. 143, 227 S.W.2d 672, 674; Supreme Court Rule 1.28. Where a case is tried to the court without the aid of a jury, Section 510.310(4) RSMo 1949, V.A.M.S. (Section 114, Laws 1943, p. 353, referred to in Supreme Court Rule 3.23) expressly provides that the question of the sufficiency of the evidence to support the judgment may be raised on appeal whether or not the question was raised in the trial court. Apparently, appellants have intended to rely on this assignment only in the event that their first assignment is sustained and the deposition of Linza Bilyeu is excluded from evidence, since appellants say "the transcript is barren of any testimony indicating that the plaintiff saw the defendants' vehicle in this case *if* the deposition of the witness Bilyeu is excluded as we believe the law requires this court to do." (Italics ours). Appellants also insist that "the plaintiff * * * was guilty of contributory negligence as a matter of law because he did, *under the evidence of the witness Aven,* operate his stock truck with complete indifference to the danger which was obvious at the intersection where this accident occurred." (Italics ours.) Appellants admit that "the evidence given by the witness Bilyeu in his deposition was crucial to the defendants' theory of contributory negligence as a defense to the plaintiff's cause of action." Appellants further say: "Only the witness Bilyeu testified that the plaintiff * * * had applied his brakes prior to the point of impact * * *. Only the witness Bilyeu in his deposition testified that the plaintiff * * * had swerved his truck to his left prior to the impact * * *. At no other place and by no other witness in the trial of this law suit was an application of brakes or a swerve prior to the impact by * * * the plaintiff indicated in any respect."

■■ In any event we find no merit in the assignment when we consider the evidence favorable to plaintiff on the issue of contributory negligence. Plaintiff, being incompetent, did not testify and plaintiff was not bound by the testimony of any witness, where the testimony of another witness was more favorable to him. Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454, 455.

Highway 160 is a north-south highway, while Highway M is an east-west highway, both highways are improved, hard

surfaced, much traveled highways and they intersect at right angles, on level ground, where the view in all directions is open and unobstructed over a wide area. The asphalt pavements are 22 feet in width and there is a stop sign 3 or 4 feet wide on each side of Highway 160 at the intersection with Highway M to control traffic entering Highway 160. The pavement of both highways flares out at the intersection. The stop sign on the west side of the intersection is located 63 feet west of the traveled portion of Highway 160. A store was located a short distance south and east of the intersection and there is a large shade tree 204 feet north of the intersection on the east side of Highway 160. The collision occurred about 3:30 p. m. The weather was warm, the sun shining and the pavement dry. The 1949 Dodge pickup truck owned by defendants and operated by Delbert L. Daniel, who was in their general employment, was traveling east on Highway M at a speed of 30–35 miles per hour, it entered the intersection without stopping or slackening speed and collided with the 1955 Chevrolet two-ton stock truck being operated by plaintiff and traveling south on the west side of Highway No. 160 at 35–40 miles per hour. The collision took place near the center of the intersection where the center lines of the two highways crossed. Defendants' Dodge truck proceeded on east through the intersection and came to rest off of the south side of the paved portion of Highway M, still headed east, but 79 feet east of the first indication of tire marks near the point of collision. Plaintiff's south bound truck swung around, faced west, and came to rest southeast of the intersection and some 62½ feet from the first indication of tire marks on the pavement in the intersection. These tire marks started on the west side of Highway 160 and 16½ feet north from the center of Highway M, and 5½ feet from the west side of Highway 160 and they extended to the southeast and directly to plaintiff's Chevrolet truck. The operator of defendants' truck was injured and died within a few days. The plaintiff, who was operating the Chevrolet truck, was injured and, as a result, is now an incompetent person. Plaintiff's wife was injured and has no recollection of the collision.

Witness Linza Bilyeu testified that he was sitting under the big shade tree some 200 feet north of the intersection and was facing south, eating his lunch, when he first saw defendants' Dodge pickup truck traveling east on Highway M at a speed of 30 to 35 miles an hour and at a distance of about 100 feet west of the point of collision. He was sure that it was west of the stop sign. It did not stop or slacken speed before entering the intersection. He first saw plaintiff's south bound Chevrolet stock truck when he heard the noise of its brakes being applied, that is, he heard brakes squealing. It was then "just about in the intersection," entering the intersection. He did not hear a horn sounded by either vehicle before the impact. He realized the east bound Dodge truck was not going to stop when he first saw it. He later saw skid marks on the pavement indicating that the Chevrolet truck had applied its brakes. The Dodge "was practically right up in the intersection * * * just coming into it" when the witness saw the Chevrolet. Both vehicles entered the intersection right together, "just practically at the same time." The accident happened so fast he was not sure about a number of details. With reference to the Chevrolet truck, the witness said he "heard the brakes, it tried to stop * * * it veered to the left a little." He didn't know whether the left front wheel crossed the center line of Highway 160 before the impact. The Chevrolet couldn't have been over 50 feet from the point where the vehicles actually came together when he first saw it. They met right in the intersection there together, in the south part. He did not think the driver of the Dodge applied his brakes, since there was no reduction in the speed of the Dodge. The speed of the Chevrolet

was 35 or 40 miles per hour, a little faster than the Dodge, but the Dodge might have been a little closer to the intersection, since they met right in the intersection. From the witness' location back of the Chevrolet he could not see the faces of the man and woman in the Chevrolet, but the man must have seen the Dodge or he wouldn't have "throwed on their brakes." Witness Aven testified that the front end and grill of the Dodge pickup hit the right front fender of the big Chevrolet truck, and the truck made a tailspin, turned around and went off the southeast corner of the intersection. Both trucks were on their own right hand side of the highways before the collision, but it "looked like" the operator of the Chevrolet "might have started to whip the truck to the left to try to miss it" (the Dodge truck.) There were marks "where the tires skidded around there." The tires were squealing when the trucks hit.

Viewing this evidence in a favorable light to plaintiff, the issue of contributory negligence was for the jury. Plaintiff was driving his truck on a through highway, with stop signs against entering traffic. Plaintiff had the right to assume the operator of defendants' truck would obey the stop sign and was under no duty to take evasive action until it appeared, in the exercise of the highest degree of care on his part, that defendants' truck was not going to stop or could not be stopped before reaching the pathway of the plaintiff's truck. Under the evidence in this case, the location of that point was for the jury. While the witness heard no horn sounded, yet whether there was time to both sound the horn and swerve the truck was for the jury. At 35 miles per hour, the collision would have happened in a little more than one second after the Dodge failed to stop at the stop sign. The average reaction time is about three quarters of a second. Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785, 788(5). Plaintiff was confronted with a sudden hazard and he may not be deemed guilty of contributory negligence as a matter of law because he might have acted more effectively in some other manner. The squealing of the brakes, the skidding of the tires, the skid marks on the highway and the turning of plaintiff's truck to the left showed an effort on plaintiff's part to avoid the collision before the Dodge collided with the right front fender of plaintiff's truck. On the evidence in this record plaintiff was not guilty of contributory negligence as a matter of law in any of the respects mentioned. See Stone v. Reed, Mo.App., 247 S.W.2d 325, 329; Sponsler v. Schroeder, Mo.App., 72 S.W.2d 150; Zumwalt v. Wabash R. Co., Mo.Sup., 302 S.W.2d 861, 862(2 & 3).

With reference to Instruction No. 2, appellants contend that there was no substantial evidence to support the submission of "damages for future loss of earnings." Appellants admit the evidence showed that the plaintiff was permanently and totally disabled, but they insist that there is no evidence from which the jury could reasonably determine what, if any, future loss of earnings the plaintiff might sustain. Appellants' theory is that, since plaintiff was a farmer, he was engaged in a business operation and that any loss which plaintiff will sustain in the future from his inability to operate his farm falls in the class of the loss of future profits from a business, that loss of such profits was "a matter of speculation and conjecture"; and that there was no substantial evidence of future loss of earnings. Appellants say that earnings refer to "income from labor, skill and knowledge, without the employment of substantial capital." See Seymour v. House, Mo. Sup., 305 S.W.2d 1, 3; Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30. Appellants argue that it is common knowledge that the operation of a farm, at this day and time, requires a heavy outlay of capital to cover the cost of the farm, the cost of equipment, machinery and additional labor, as well as the cost of livestock and seed for crops. There is no contention that the loss of future profits was submitted by the instruction. The ques-

tion here is whether plaintiff's evidence was substantial and sufficient to support the submission of damages by the loss of future earnings.

The facts necessary to a determination of this issue are not mentioned in appellants' statement of facts, except the fact that plaintiff was permanently and totally disabled as a result of the injuries sustained. The record shows that plaintiff was a farmer and stock buyer; that he was 65 years of age and, on prior to the collision in question, was in good health and active for a man of his age. He owned and operated two farms, one of 174 acres, the other of 75 acres, near Green Forest, Arkansas, and made his home on one of them. In addition to his farming operations, he bought livestock in Arkansas for a packing company at Springfield, Missouri, on a commission basis of fifty cents per hundred pounds. He usually bought stock over the week-end and on Mondays and Tuesdays in Harrison, Arkansas, and delivered the stock to the packing company on Wednesday of each week, in his two-ton Chevrolet truck with a stock bed, the one involved in this accident. He also bought and sold livestock that was not suitable for packing company use. His average gross earnings were around $5,000 and his net earnings were between $2,000 and $3,000 annually. On the morning in question he had driven his Chevrolet stock truck to Springfield with a load of cattle, which he had delivered to the packing company. On this assignment the extent of loss is immaterial. It is further apparent, we believe, from the evidence set out that at least a part of plaintiff's income was derived from physical labor, skill and knowledge, without the employment of substantial capital. There is no contention that the instruction erroneously submitted loss of earnings "heretofore suffered." In such situation an inference as to loss of future earning could be drawn from proof of permanent injury and total disability. McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542, 546(5); Taylor v. Terminal R. Ass'n

of St. Louis, Mo.App., 112 S.W.2d 944, 948(3); Dean v. Kansas City, St. L. & C. R. Co., 199 Mo. 386, 97 S.W. 910, 913(b). And see Donahoo v. Illinois Terminal R. Co., Mo.Sup., 300 S.W.2d 461, 466(7); Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 166(6, 7). There was substantial evidence that plaintiff, by reason of the injuries, would sustain a loss of future earnings. The amount of such future earnings was for the jury on the evidence presented.

Appellants next contend that Instruction No. 2 erroneously "permitted the recovery of double compensation because present impairment of future earning capacity is included in the compensation for the injuries themselves." Instruction No. 2, in part, advised the jury that if they found for plaintiff, they should "award to him such an amount as you find and believe from the evidence will fairly and reasonably compensate him for the injuries sustained by him as a direct result of the collision in question, and in arriving at your verdict you may take into consideration:

"First, the nature and extent of the injuries, if any, that you find and believe from the evidence plaintiff has sustained as a direct result of the collision in question. * * *.

"Third, such loss of earnings and diminished and impaired earning capacity, if any, as plaintiff has heretofore suffered, and such loss of earnings and diminished or impaired earning capacity as he may reasonably be expected to suffer in the future as a direct result of the collision in question. * * *."

"It is the defendants' contention that * * * the present impairment of the plaintiff's future earning capacity is included in and is a part of the plaintiff's permanent injuries and that the instruction authorizes the jury by this overlapping of items to award the plaintiff double damages." Appellants say that "nowhere in the instruction is the jury advised whether or

not they can find the plaintiff's injuries permanent, but the evidence in the case is clear and uncontradicted that the plaintiff is totally and permanently disabled." Appellants' theory is that since plaintiff's evidence concerning his permanent and total disability was uncontradicted, the jury could so find, although that issue was not submitted by any instruction, but, if they did so find, and also added anything for present impairment of future earning capacity there would be an overlapping and allowance of double compensation. However, the instruction is not so drawn.

■ We think the criticism of this instruction and the argument that the instruction permits plaintiff "to recover a sum for permanent and total disability and also a sum for the present impairment of his future earning capacity or capacity to labor" is fully and completely answered in the opinion in Moss v. Mindlin's Inc., Mo. Sup., 301 S.W.2d 761, 768(6, 7), to which reference is had. Appellants seek to distinguish that case on the ground that the instruction there considered uses the words, compensation to "plaintiff for any and all injuries received," while instruction No. 2 refers to an amount which "will fairly and reasonably compensate him for the injuries sustained by him." The decision cannot be distinguished on that basis. We may assume that the damages sustained by plaintiff by reason of the injuries themselves include such damages as result from the present impairment of future earning capacity, yet the instruction does not authorize the jury to allow plaintiff double compensation, to wit, damages for both as separate items of damage. See Moss v. Mindlin's Inc., supra, 301 S.W.2d 761, 768.

■ Instruction No. 2 further told the jury that "in arriving at your verdict, you may take into consideration * * *. Fourth, all expenses heretofore reasonably incurred, or which plaintiff may reasonably be expected to incur in the future for doctors or surgical care and attention, medical treatment, hospital care, for nurses or other reasonably necessary attendants as a direct result of the collision in question." Appellants contend the instruction is erroneous in that "the fourth paragraph of said instruction permitted the plaintiff to recover for the cost of past medical care and attendants *in the absence of any evidence* that such *expenses were reasonable*, and further because said paragraph of plaintiff's instruction No. 2 permitted the plaintiff to recover for future cost of medical care and attendants *in the absence of evidence as to what such care would be and the reasonable cost of same.*" (Italics ours.)

The transcript shows an admission in open court by defendants that the plaintiff had paid to the date of the trial $3,910.85 for hospital care, $2,263 for doctors' care, $9,235 for nursing care, $20 to the barber while plaintiff was "in St. John's," $30 for ambulances, $47.21 for hospital bed, and $17.73 for hospital bed rails and sheeting. There was testimony that the amounts paid to the hospitals, and the doctors, the nurses and the others, were the amounts shown by "the bills that were submitted" by them; that all of the nurses employed were registered nurses, except one or two male attendants, and the amounts paid to "them was the regular going rate for eight hours service."

Further, plaintiff's injuries had been reviewed before the jury, his physical and mental condition during the entire period since the collision had been fully shown, the medical, hospital and nursing which his condition required had been testified to at some length by the various witnesses. The necessity for most of these expenditures was fully shown by plaintiff's evidence.

Appellants rely particularly on Girratono v. Kansas City Public Service Company, 363 Mo. 359, 251 S.W.2d 59, 65, where the court held an instruction erroneous, which "specifically authorized the jury to award 'the reasonable value' of the medical attention received by plaintiff," when "there was

no evidence in the record of Dr. Nigro's charge nor the reasonable value of his services." Dr. Nigro had been treating plaintiff for about two years. The error could not be cured by remittitur since the court had "no idea how much the jury may have included for the items not established by the evidence * * * and any remittitur would rest on speculation and conjecture." Appellants also rely on Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252, 256, where there was no evidence to show either the amount of the charge, or the reasonable value of the services.

■ It is true that there is no direct testimony that the charges for past medical care and attendants were reasonable, but the presentation of the bills and their payment by plaintiff's guardian was some evidence that the charges were reasonable. Wyse v. Miller, 222 Mo.App. 165, 2 S.W.2d 806, 807(1); Stewart v. George B. Peck Co., 234 Mo.App. 864, 135 S.W.2d 405, 412(8). And there was other evidence that the nurses and attendants were paid at "the regular going rate for eight hours services," which evidence the jury could consider in determining reasonableness.

■ In their reply brief appellants state: "We are concerned with a specific damage instruction *and we do not contend that the error is reversible in our situation.* Our contention is that there was a complete failure of proof as to the reasonableness of the medical and nursing expenses which were stipulated and that such amount should be eliminated from the verdict because of the failure to prove reasonableness of such expenses." (Italics ours.) Apparently, appellants have changed their position and are now seeking an additional remittitur of this amount, however, no such issue is presented for decision by appellants' principal brief and the matter is not before us on this appeal. Nemours v. City of Clayton, 351 Mo. 317, 172 S.W.2d 937, 939; Berghorn v. Reorganized School

Dist. No. 8, 364 Mo. 121, 260 S.W.2d 573, 580.

As to the second point of this assignment that there is no evidence as to the necessity or cost of future medical care or attendants, appellants cite no authorities in support of their position, but we think the evidence hereinbefore and hereinafter set out, as to plaintiff's physical condition and other matters, is entirely sufficient to show the necessity for, the extent of and the cost of the future medical treatment and care of plaintiff so as to sustain the giving of this instruction in the respects mentioned. Stoebier v. St. Louis Transit Co., 203 Mo. 702, 102 S.W. 651, 654; Barger v. Green, Mo.App., 255 S.W.2d 127, 132; Sang v. City of St. Louis, 262 Mo. 454, 171 S.W. 347, 349; Dean v. Kansas City, St. L. & C. R. Co., 199 Mo. 386, 97 S.W. 910, 913 (as to the probable continuance of the shown condition.) The assignment is overruled and we do not reach respondent's contention that under the record presented, the error, if any, was cured by the remittitur ordered by the trial court, which would have more than covered these items. See Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713(8); Miller v. Kansas City Western R. Co., 180 Mo. App. 371, 168 S.W. 336, 339(9–11); DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 568.

■ ■ Appellants assign error on the giving of instruction No. 2, on the ground that there was *no evidence* from which the jury could properly determine the value of plaintiff's truck immediately before and immediately after the collision. Appellants argue as to the admissibility, credibility, weight and value of plaintiff's evidence and say that portions of it were "incompetent to establish the value of plaintiff's truck immediately prior to the collision"; and that the testimony of a certain witness, as to the value of the truck before and after the collision, was incompetent because the witness, admitted to be an expert as to truck values, was not qualified to testify

concerning this truck's value, not having seen it before it was damaged or immediately after the collision. He did see it later, before repairs were made. His opinion was given in answer to a hypothetical question, since there was other evidence that the truck was a 1955 Chevrolet two-ton truck having a combination stock and grain bed and in average or above condition when wrecked. Photographs showing the condition of the truck after the collision were also in evidence. No error is assigned for review with reference to the admission of any evidence. We accordingly consider the evidence as if it came in without objection. Considering the evidence in the record in a light favorable to plaintiff, we find it sufficient to sustain the giving of the instruction. It is admitted that the instruction correctly states the measure of damages applicable to the truck. The assignment is overruled. See Haley v. Edwards, Mo. Sup., 276 S.W.2d 153; Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, 1087(9).

■■■ Error is assigned on the failure of the trial court to grant a new trial because of the misconduct of a juror. Defendants filed a motion for new trial and amended it to set out a charge of misconduct on the part of one of the jurors, a woman who signed the verdict for plaintiff. The supporting affidavits, executed by one of the defendants and her daughter, stated that, while in the women's rest room in the Greene County Court House during a recess following the voir dire examination of the jury, they heard this party, who was later a member of the jury panel to try the case, state that plaintiff "Meyers deserves everything he is asking for and more." A counter-affidavit of the juror was filed by plaintiff and, thereafter, the court heard the conflicting oral testimony of witnesses who appeared personally before him. After the $50,000 remittitur, hereinbefore referred to was entered, the motion for a new trial was overruled. The remittitur was ordered on the ground that the verdict returned by the jury was ex-

cessive. The court said he would grant the new trial on the ground that the verdict on the first count was excessive, if the remittitur required was not entered. In overruling the motion for a new trial the court overruled each and every assignment of error therein contained.

From the testimony heard by the court, the court could find that, if the words were spoken, they were spoken on Monday morning, March 14, 1950, just after the voir dire examination, but were not reported to counsel until on Saturday afternoon, more than a week following the conclusion of the trial on March 15, 1957. The affidavits were not filed until March 25, 1957. There was evidence that the juror in question was one of the last to consent to sign the nine juror verdict returned, she having theretofore held out for a lesser sum. The evidence heard by the court presented a factual issue for determination of the trier of facts and a careful consideration of the 75 pages of testimony heard on this issue does not indicate to us that the trial court erred in his decision on the issue presented. Defendants were entitled to twelve impartial jurors. Murphy v. Graves, Mo.Sup., 294 S.W.2d 29, 35; Middleton v. Kansas City Public Service Co., 348 Mo. 107, 152 S.W.2d 154. However, the court having heard the evidence and having overruled the motion for a new trial, we conclude that the trial court decided that defendants did have twelve impartial jurors. On the record presented we must defer to that holding.

Appellants also charge an abuse of the trial court's discretion in refusing to grant a new trial. Appellants rely upon the testimony of their witnesses, which the trial court disbelieved, and upon the excessive verdict which the court ordered reduced, and then entered judgment when the remittitur was made. No abuse of the court's discretion appears.

■■ Appellants next contend that "the court erred in overruling the defendants' motion for a new trial because the verdict

was so excessive as to show bias and prejudice on the part of the jury against the defendant, which was not cured by the remittitur." Appellants argue that "the amount of the verdict clearly shows bias and prejudice on the part of the jury." Appellants admit that "the evidence in the case is clear and uncontradicted that the plaintiff is totally and permanently disabled," but except for this brief statement, appellants' brief fails to state the facts relevant to the question presented for decision. See Supreme Court Rule No. 1.08(b). The conclusion stated is only a small part of the picture shown by this record. As stated, plaintiff was able-bodied, sober and industrious, with no mental impairment. He was sixty-five years of age when injured and he had a net income, as a farmer and stockbuyer, of from two to three thousand dollars. His life expectancy was about eleven years, and there was evidence that even after the receipt of his injuries, with proper care, he could reasonably be expected to live out his life expectancy. Reference has heretofore been had to the amounts expended for medical treatment, hospital care and attendants as was required from May 16, 1956, to the date of the verdict, March 15, 1957.

Plaintiff was thrown from the right door of his truck and fell on the pavement with his head bent back under his body. He was removed to the hospital in an unconscious or semi-conscious condition. X-rays disclosed a fracture of the skull and a fracture of the body portion of the sixth cervical vertebra of the neck. On the following day, his skull was opened and a large blood clot was removed from between the skull and brain covering. The blood clot measuring five inches by four inches by two inches. The area of the brain affected controlled the right arm and leg and these extremities were paralyzed. Later, he suffered several convulsions and small holes were drilled in his skull and certain tests of the brain were made. The tests and examination disclosed brain atrophy. He was not able to ask for anything or make known his physical needs. Nurses cared for him and fed him like an infant. After some improvement, he later became mentally confused and suffered from hallucinations. At times he became violent and had to be restrained by being tied down. By July 30, 1956, he again showed some improvement and was removed to his son's home, but he was never able to walk alone or take care of his personal needs. On August 8, 1956, he again had convulsions and was returned to the hospital. He was then restless and weeping all the time, evidencing anxiety and depression. Nurses had to be continuously available to look after him. In September he was given electric shock treatments, but he did not respond. A home was rented in Springfield to provide home environment, where he remained with his nurses until December 3, 1956, when he was taken back to the hospital. At no time has he been able to walk without assistance. He has had trouble drinking, since fluids sometimes go the wrong way into his lungs. He is not able to discharge mucous that forms in his windpipe, and it has to be mechanically pumped out. Recently before the trial he has remained in the hospital. He is so weak he need not be restrained. He has no control of his kidneys and bowels and it is necessary for a tube to be placed in the bladder to drain the urine. From the date of injury until February 7, 1957, he had had the continuous attention of attendants. He now has a place in the hospital near the nurses station, where he can have the attention of the floor nurses without the attention from private nurses. At times he has been unable to chew solid foods and must be fed soft food. Since December 3, 1956, he has been completely bedfast. At times he has been able to make some response to questions, such as answering "yes." There was opinion evidence that he might live several years in his present condition. He will never recover to the extent of being able to make a living. It is doubtful that he

will ever recover enough to take care of himself without aid. He will probably require the continuous attendance of nurses and assistants the rest of his life.

Appellants have cited four cases in which such an issue as is presented was ruled, to wit, Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157, 162 (where the trial court sustained such an assignment and this court affirmed) and Rucker v. Illinois Terminal R. Co., 364 Mo. 804, 268 S.W.2d 849, 854; Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 576, 161 A.L.R. 383; and O'Brien v. Louisville & Nashville R. Co., 360 Mo. 229, 227 S.W.2d 690, 694 (in each of which cases such an issue was presented and ruled adversely to defendant by the trial court and the case affirmed when the issue was presented here.) Appellants have cited no case where this court has not affirmed the action of the trial court, where the trial court has overruled such an assignment. The reason is that, while trial courts may infer bias and prejudice from the size of the verdict alone since they weigh the evidence, appellate courts, as a matter of policy, ordinarily will not do so but will only determine whether the record shows an abuse of the trial court's discretion in sustaining or overruling the motion for a new trial. King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, 464(8); Polizzi v. Nedrow, Mo.Sup., 247 S.W.2d 809, 811; Parks v. Thompson, 363 Mo. 791, 253 S.W.2d 796, 798; Dye v. St. Louis-San Francisco R. Co., 361 Mo. 331, 234 S.W.2d 532, 534. Appellants point to nothing in this record to show bias and prejudice of the jury against defendants except the size of the verdict and the matter of the one juror, which matters have been ruled by the trial court adversely to appellants. On the record here, this court cannot say that the trial court abused its discretion and acted arbitrarily in refusing to hold that the verdict was the result of bias and prejudice on the part of the jury.

Appellants' final contention is that the verdict, after remittitur, is still excessive and that a further remittitur should be required. Respondent insists that this issue is not sufficiently presented under points and authorities in appellants' original brief (Supreme Court Rule 1.08(a) (3), although certain authorities are cited on that issue. The matter is more fully covered in appellants' reply brief, but it is well settled that an assignment of error appearing for the first time in a reply brief cannot be considered by the court. State ex rel. Houser v. St. Louis Union Trust Co., Mo.Sup., 248 S.W.2d 592, 594(1); Nemours v. City of Clayton, supra; Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W.2d 163, 167; Smith v. Thompson, 346 Mo. 502, 142 S.W.2d 70, 76(12). It is also insisted that there is a vital distinction between an assignment that "the verdict is excessive" and an assignment that "the verdict is so grossly excessive as to indicate that it is the result of bias and prejudice"; and that neither assignment includes the other. Jones v. Pennsylvania R. Co., supra, 182 S.W.2d 157, 159; Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304, 309; Sofian v. Douglas, 324 Mo. 258, 23 S.W.2d 126, 129; Taylor v. St. Louis Public Service Co., Mo.Sup., 303 S.W.2d 608, 612.

Defendants' motion for a new trial charged that the damages assessed were excessive, improper, unreasonable and unsupported by evidence. The trial court considered the assignment and made the conditional order which resulted in the $50,000 remittitur, leaving a balance of $100,000 for which judgment was entered. In view of the amount of this judgment as finally entered in this case, we shall assume, without deciding, that the issue of excessiveness, after remittitur, was in fact sufficiently presented in appellants' original brief. We shall rule the issue of excessiveness on its merits and determine whether a further remittitur should be required. It will not be necessary to again or fur-

ther review the evidence concerning the injuries and damages sustained by plaintiff. Sufficient facts have been stated.

Appellants have cited many cases dealing with the issue of excessiveness, including Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487 (decided in 1949, amount approved $80,000); Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383 (decided in 1945, amount approved $50,000); Rucker v. Illinois Terminal R. Co., 364 Mo. 804, 268 S.W.2d 849 (decided in 1954, amount approved $45,000); Missouri Pacific Transportation Co. v. Miller, Ark., 299 S.W.2d 41 (decided in 1957, amount approved $75,000). In none of the cases cited are the injuries and damages sustained closely similar to those shown by the record in this case and, accordingly, the cases cited are of little aid under the facts here.

There is no mathematical formula by which it may be determined whether and how much a verdict is excessive. Each case must be decided on its own peculiar facts. In this case the trial judge, who saw and heard the witnesses, ordered a $50,000 remittitur. Where the trial court has considered and passed upon the matter of excessiveness and ordered a substantial reduction, as here, we are usually reluctant to order a further reduction. Parlow v. Carson-Union-May-Stern Co., Mo.Sup., 310 S.W.2d 877, 885.

After a careful consideration of all the evidence in the record presented which is favorable to the judgment entered, we do not find the amount thereof to be excessive. No further remittitur should be required. The judgment as entered should be affirmed. It is so ordered.

All concur.