William G. STUBBS, Respondent,

v.

KANSAS CITY TERMINAL RAILWAY COMPANY, Appellant.

No. 24860.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

Sam D. Parker, W. M. Stapleton, Daniel M. Dibble, Kansas City, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel, for appellant.

Lee E. Wells, Kansas City, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, of counsel, for respondent.

HOWARD, Presiding Judge.

This is a suit for personal injuries brought under the Federal Employers' Liability Act by respondent which resulted in a verdict for respondent in the amount of $8,500.00. Appellant filed a motion for new trial which was by the trial court overruled on condition of remittitur of $2,000.00 with accrued interest thereon; alternatively, the trial court ruled that if such remittitur was not made, the motion for new trial would be sustained "on the ground that the verdict was the result of bias, passion and prejudice on the part of the jury against the defendant in favor of plaintiff." Respondent did in fact make remittitur as required and the court then entered judgment for respondent in the amount of $6,500.00. Appellant has duly appealed to this court. We shall refer to the parties as they appeared below.

Plaintiff's duty as an employee of defendant was to handle sacks of mail and operate what is called a mail coding machine. These machines had been in use by defendant only a short period of time and plaintiff had been operating the machine for only about a month at the time of his injury. In the operation of this machine plaintiff would take a full mail sack from a conveyor belt at his side and place it in what is called

the "hopper" of the machine. He would then push certain buttons on the coding board which would determine the route the sack of mail would take on its way to its destination. When this was done, the mail sack would fall down through the hopper onto a conveyor belt which would take it on its way. In some instances, the sack fell directly onto the proper belt and was carried away. In other instances, a shuttle in the lower part of the machine would cross over thereby pushing the mail sack onto a different conveyor belt to go on its way in a different direction. There were several of these machines in a line beside the conveyor belt which brought the mail sacks to the various coding machines.

On the day of the accident this assembly line operation and the conveyor belt which brought the mail sacks to the coders had been shut down because of a jam. During this lull in operations, plaintiff leaned back against the machine behind him and placed his feet in an opening in the lower part of the machine to rest his legs and feet. When the operation started up again plaintiff stood on one foot and left the other foot resting in the opening in the machine. He placed a mail sack in the hopper, pressed the appropriate buttons on the coder and the mail sack fell down through the hopper. The shuttle moved across to push the mail sack onto the second conveyor belt and in doing so caught plaintiff's foot against the side of the opening. Plaintiff attracted the attention of a fellow-worker at the next machine who, when he saw what had happened, ran to the end of the line and closed two air valves so as to release pressure on the machines and permit defendant to extract his foot. The power for this operation was compressed air. Plaintiff was taken to the hospital where he was x-rayed, then was taken to his home. Medical testimony showed that he had a crushing injury to the front part of his foot, two toes were broken and one toe was cut. There was some bleeding.

The machines were lighted from above and the lower part of the machine was in shadow. Plaintiff testified that he had never had occasion to look at or examine the lower part of the machine or the opening therein where his foot was injured. When he was standing in position to operate the machine he could not see the opening. He knew that the shuttle moved across in the lower part of the machine but did not know that it moved across the opening or so close to the front of the machine as to catch his foot. He did not realize there was any danger in having his foot in the opening while the machine was operated.

After two weeks plaintiff tried to go back to work but could not wear his shoe and remained home for the third week. Plaintiff testified that he went back to work at the end of the third week because he had to support his family even though he had much pain. For a while after he returned to work, he was not put back on the coder but worked at loading and unloading mail sacks on and off the trains which involved moving trucks loaded with mail and generally moving about the station on his feet. At the time of trial he was again working on the mail coder as before the injury. Plaintiff testified, and he was corroborated by his daughter, that for at least 18 months after the injury he suffered severe pain every day and after being on his feet for an 8 hour day, his foot would be swollen and irritated and when he returned home he would soak his foot in water, his daughter would massage it and they would use a vibrator thereon. This painful condition gradually decreased and at the time of the trial some 4½ years after the injury, plaintiff complained of only occasional pain. At the trial the medical testimony was that the fracture of one toe had "healed and in satisfactory position, although there was some angulation at the fracture site." The x-ray taken some 3 years after the accident did not reveal the fracture of the other toe although the x-ray taken immediately after the injury did show the fracture of both toes. The doctor testified to "residual stiffness in the toes of the foot, particularly in the great toe or the big toe or first toe." As to the con-

tinuation of pain long after the injury had healed, the doctor testified that plaintiff had a condition known as "metatarsalgia, which means pain in the forepart of the foot in the region of the metatarsal bone due to injury which never quite gets well." Plaintiff has a low arch in the front of his foot (the metatarsal arch) as the result of the crushing injury to the foot. The doctor stated "as he works on his foot it hurts after a time." He also testified that the crushing injury to the foot resulted in "an extremely painful condition that lasts for many, many months, known as Sudeck's neurovascular disturbance. It is very common and an extremely painful condition. * * *" As to the neurovascular disturbance, the doctor stated "Recovery after a prolonged period of time is almost always had, or almost always comes about."

Plaintiff had loss of wages from being off work and from his inability to work available overtime in a gross amount of slightly over $900.00. Defendant makes no issue on this appeal as to the correctness of this amount.

■ Defendant complains that the trial court erred in overruling the motion for new trial on condition of remittitur when it found that the verdict was the result of bias, passion and prejudice. Defendant contends that remittitur is authorized only in a situation where mere excessiveness of the verdict exists but that where the excessiveness is the result of bias, passion and prejudice it cannot be said that such bias, passion and prejudice affected the amount of the verdict only and did not affect the determination of the issue of liability. See Artstein v. Pallo, Mo., 388 S.W.2d 877. Defendant argues that where bias, passion and prejudice exist the defect cannot be cured by remittitur but that a new trial must be granted. With this general contention we agree. This distinction between simple excessiveness and excessiveness which results from bias, passion and prejudice is well set out in Skadal v. Brown, Mo., 351 S.W.2d 684, l.c. 689, where the court said:

"* * * This Court recognizes a distinction between a verdict which is excessive and a verdict which is so grossly excessive as to indicate bias and prejudice. Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157, 159; Stokes v. Wabash R. Co., 355 Mo. 602, 197 S.W.2d 304; Taylor v. St. Louis Public Service Co., Mo.Sup., 303 S.W.2d 608, 612. A verdict which is excessive is one in which the jury made an honest mistake in weighing the evidence as to the nature and extent of the injury and in fixing the damages and awarded a sum disproportionate to the amounts usually awarded for comparable injuries under the rule of uniformity. Such a mistake can be cured and corrected without a new trial, by requiring a remittitur of a portion of the amount awarded. A verdict which is so grossly excessive as to indicate bias and prejudice is one in which the jury was guilty of misconduct by fixing an excessive figure as a result of bias and prejudice engendered during the course of the trial. Such misbehavior vitiates the entire verdict, not only as to the amount of the award, but also as to the determination of liability, and cannot properly be corrected by a remittitur, Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532; Knight v. Swift & Co., Mo.Sup., 338 S.W.2d 795, 801, but requires that the verdict in its entirety be set aside * * *."

See also Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333, l.c. 339–340, 8 A. L.R.2d 710.

Thus, in the present case we are faced with a self-contradictory order by the trial court. That part of the trial court's order which overrules the motion for new trial on condition of remittitur presupposes and could only be founded on a finding of mere excessiveness in the verdict as contrasted to a finding of excessiveness caused by bias, passion and prejudice of the jury. However, the second portion of the trial court's order which was made operative only if and when the plaintiff refused to remit, is based

upon an explicit finding of bias, passion and prejudice. This latter finding would require a new trial and the condition so found to exist could not be cured by remittitur. Thus, the trial court in one breath says there is no bias, passion and prejudice but only mere excessiveness which can be cured by remittitur. In the next breath, the trial court found bias, passion and prejudice which condition could not be cured by remittitur but which required a new trial, but the trial court failed to order the new trial required by such finding. In view of this self-contradiction the deference which we would normally pay to the discretion of the trial court in this matter is greatly weakened. Defendant insists that bias, passion and prejudice on the part of the jury is shown for three reasons: (1) the size of the verdict itself, (2) the alleged failure of the jury to reduce the amount of its verdict in proportion as the plaintiff may have been contributorily negligent as required by the instructions, and (3) the fact the attorney for the plaintiff in his closing argument stated that a verdict in the amount of $7,500.00 would be fair and just, and the jury returned a verdict in a larger amount.

■ It is true that the trial court can find bias, passion and prejudice on the part of the jury from the amount of the verdict alone and that where the trial court has refused to make such a finding the appellate court will not weigh the evidence and make a finding of bias, passion and prejudice from the excessive amount of the verdict alone. See Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S.W.2d 157; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Skadal v. Brown, Mo., 351 S.W.2d 684; and Hartz v. Heimos, Mo., 352 S.W.2d 596. However, we cannot find in this case that the trial court's finding of bias, passion and prejudice was based upon the excessiveness of the verdict alone when the trial court by its order of remittitur in effect ruled that such excessiveness could be cured by a $2,000.00 remittitur.

■ In passing on the claim of mere, excessiveness and in passing on the claim of bias, passion and prejudice, the trial court exercises a broad judicial discretion which must be deferred to by the appellate court unless from an examination of the record we can determine that the action of the trial court in making its findings was in excess of and an abuse of its discretion. See Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333, 8 A.L.R.2d 710; Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Killian v. Wheeloc Engineering Co., Mo., 350 S.W.2d 759.

■ We cannot agree with defendant's contention that the failure of the jury to reduce plaintiff's recovery by reason of his contributory negligence indicates bias, passion and prejudice. The record does not disclose facts which would enable us to hold that plaintiff was guilty of contributory negligence as a matter of law and consequently such issue was for determination by the jury. We note that this contention was not contained in the motion for new trial.

■ In closing argument, plaintiff's counsel did indicate that a verdict of $7,500.00 would be fair and just but he was quick to point out to the jury that he did not consider himself an expert in the field or consider himself peculiarly qualified to determine a fair award to plaintiff for his continuous pain in his feet and that he would leave that question to the judgment of the jury. We note that plaintiff prayed for $50,000.00 in his petition. We do not believe that the verdict a thousand dollars over and above the figure mentioned in argument shows bias, passion and prejudice.

The motion for new trial does allege misconduct on the part of two members of the jury who failed to reveal on voir dire examination that they had received payments and medical benefits under workmen's compensation but the trial court did not sustain the motion for new trial on this basis and thereby overruled such contention. This, in contrast to Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333, l.c. 340, where the court sustained motion for new trial

(among other reasons) because of bias, passion and prejudice induced by the misconduct of the plaintiff on the stand.

■ This case was well tried by the court and by counsel for both parties. There were no untoward incidents in the trial and the defendant has pointed out nothing from which a logical inference of bias, passion and prejudice on the part of the jury can be made. In view of the fact that the trial court apparently believed that the excessiveness of the verdict could be cured by remittitur of $2,000.00, we believe that its finding of bias, passion and prejudice and a granting of a new trial on that basis which would be effective only in the event that the plaintiff refused to remit, constituted an abuse of discretion and does not require this court to order a new trial when the plaintiff has remitted in the amount required by the trial court. In reaching this conclusion we are mindful of the fact that the trial court heard and saw all that went on in the courtroom during the trial and can therefore consider matters which are not reflected in the written record before this court. See Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532 and Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189. However, the trial court did not refer to any incident which might have resulted in bias, passion and prejudice on the part of the jury and our very careful scrutiny of this remarkably clean record which includes all of the argument to the jury does not reveal even a hint of anything that might cause bias, passion and prejudice. Under these circumstances and in view of the contradictory nature of the trial court's order, we are forced to the conclusion that none in fact existed.

■ Defendant also contends that the judgment as it now stands in the amount of $6,500.00 is so excessive as to authorize this court to require an additional remittitur. In this contention defendant relies entirely on Matta v. Welcher, Mo.App., 387 S.W.2d 265. In this case the plaintiff suffered a complete dislocation of one of the bones in the arch of his foot, also a slight back strain. The dislocation required an open surgical reduction and the foot was put in a cast. Plaintiff was a sergeant in the Army and off duty for three months. As to pain, the court stated that the dislocation "undoubtedly caused pain at the time." At the time of trial approximately three years after the accident, plaintiff had some weakness in the arch which sometimes caused pain, but was free from his back trouble. There is no other evidence of loss of wages or other special damages. In this case the Springfield Court of Appeals reduced an $8,000.00 verdict to $4,000.00. In the case at bar the original $8,500.00 verdict was reduced by the trial court to $6,500.00. Plaintiff had loss of wages totaling a little over $900.00 Thus, there is a difference between the judgment as reduced in the Matta case and the present judgment over and above special damages in an amount slightly less than $1,600.00. We note that the opinion in the Matta case was handed down in February of 1965, over three years ago. We are cognizant of the increasing inflation during this intervening period. We have examined the cases cited by plaintiff. As is usual these cases and the cases revealed by our own research do not parallel the facts in the case at bar. However, in consideration of all these cases and being mindful of the rule of uniformity of verdicts, we cannot say that the present judgment is so unreasonable as to require additional remittitur. In arriving at this result we are supported by the fact that the trial court considered this matter and concluded that the $2,000.00 remittitur was all that was required.

■ Defendant also complains that the court erred in not granting a new trial because the amount of the verdict shows that the jury disregarded instruction No. 4 on contributory negligence and further disregarded the damage instruction because they did not reduce the amount of the verdict in view of plaintiff's contributory negligence as a matter of law. From the facts heretofore recited, it is apparent that the question of contributory negligence was one for the jury. On these facts we cannot say that

plaintiff was contributorily negligent as a matter of law. See Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844. The question of contributory negligence being one for the jury we cannot conclude that they disregarded these instructions on the subject. The jury could well have concluded that the plaintiff was not contributorily negligent and such conclusion would properly result in a verdict unreduced by the claimed contributory negligence.

We therefore conclude that the judgment below is for the proper party and in an amount which we are not justified in changing. The judgment is therefore affirmed.

All concur.